646 A.2d 689

PARENTS UNITED FOR BETTER SCHOOLS, INC.; Clifton Weldon; Alicia Buckson; Lorna Williams; Robin Pierce, Guardian of Youree Johnson; Robin Pierce, Guardian of Dana Welks; Anthony Scott, Guardian of Nitikia Scott; Harold Stephens, Guardian of Melissa Stephens; Philip Battaglia, PNG of Phil Battaglia, Appellants,

v.

SCHOOL DISTRICT OF PHILADELPHIA BOARD OF EDU-CATION and Dr. Ruth Hayre, President School District of Philadelphia Board of Education and Dr. Constance E. Clayton Superintendent of Schools of School District of Philadelphia.

Commonwealth Court of Pennsylvania.

Argued May 11, 1994.

Decided Aug. 5, 1994.

4. Our resolution of this issue renders determination of employer's remaining issues unnecessary.

Dennis M. Abrams, P.C., for appellants.

Glenna M. Hazeltine, for appellees.

Before CRAIG, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

DOYLE, Judge.

Parents United for Better Schools (PUBS) appeals an order of the Court of Common Pleas of Philadelphia County dismissing their complaint in equity for lack of standing.

On June 24, 1991, the Board of Education of the School District of Philadelphia adopted Policy 123 entitled Adolescent Sexuality (Policy 123). Policy 123 provides for the development of broad, abstinence-based curricula focused at preventing sexually transmitted diseases. The program includes a provision for the availability of condoms to students upon request at school-based health clinics.

On December 2, 1991, letters were mass-mailed to parents by the principals of the pilot schools of the program advising them of the availability of condoms to students as part of the "health services" program. Parents were informed that they were required to reply only if they did not wish for their child to participate in the program. Parents were asked to respond within two weeks. The condom distribution program began on December 17, 1991.

PUBS, a non-profit corporation, many of whose members have children who attend public high schools in Philadelphia, and seven individuals [1] filed a complaint in equity on January 13, 1992, seeking injunctive and declaratory relief. PUBS alleged, among other things, that its right to affirmatively consent prior to the rendition of health or medical services at school is violated by the Policy 123 "opt-out" provision. That is, parents do not expressly consent to the distribution of condoms to their children, but their consent is presumed by a parent's lack of response to the letter sent by the principals.

1. PUBS and the seven individuals are collectively referred to as "PUBS."

The Board filed a motion for judgment on the pleadings which was denied. The case was listed for trial; the Board filed a motion for summary judgment, asserting that PUBS lacked standing to sue and, therefore, their complaint should be dismissed. The trial court granted the motion, and this appeal followed.[2]

PUBS argues that (1) the trial court erroneously found that they had failed to assert an adversely affected interest; and (2) erroneously failed to consider the organizational standing of PUBS when it held that PUBS had failed to allege an interest separate and distinct from the seven individually named plaintiffs.

The essential inquiry in determining the standing of a litigant is:

Have the [litigants] alleged such a personal stake in the outcome of the controversy as to assure the concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.

*Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Taking guidance from federal interpretation of standing principles, our Supreme Court has outlined the factors which must be considered in *William Penn Parking*

**2.** Our standard of review is as follows:

Summary judgment is properly granted where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.' Pa.R.C.P. No. 1035(b). 'The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.' *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). Summary judgment may be entered only in those cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.* 522 Pa. 367, 369, 562 A.2d 279, 280. (1989).

*Pennsylvania State University v. County of Centre,* 532 Pa. 142, 144–45, 615 A.2d 303, 304 (1992). Additionally, a trial court must not decide the factual dispute; it must confine its inquiry to the question of whether a material factual dispute exists. *Mylett v. Adamsky,* 139 Pa.Commonwealth Ct. 637, 591 A.2d 341 (1991).

*Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). First, the litigant must allege an interest which has been adversely affected; that is, has the party been harmed by the action which is challenged. Second, there must be a discernible adverse effect to some interest other than that shared by the public at large. Third, the adverse effect must be direct and immediate, and not remote in consequences. *Id.*

■ First, PUBS contends that the trial court erred in dismissing their complaint for lack of standing. We agree.

PUBS argues that Policy 123 improperly infringes on the common law parental right to expressly consent before medical treatment is administered to their minor children because the condom distribution program *presumes* consent by a parent's silence (not sending in the "veto" form):

> The requirements of prior parental consent (opt-in) and parental veto (opt-out) are functionally and procedurally different. Parental consent is more stringent, more protective of the rights at stake because it requires the entity seeking consent to wait until consent is affirmatively given. For example, if a parent does not act, consent is not given. Opt-out, on the other hand, allows the entity seeking approval to proceed until the parent actually vetoes their child's participation. For example, if a parent does not act, consent is assumed.

PUBS Brief at 8.

The principle that parental consent must be secured before medical treatment provided is time honored and has been recognized by both the courts and the legislature.[3] Generally, it is for the parent in the first instance to decide what is actually necessary for the protection and preservation of the life of his or her child. 59 Am.Jur.2d Parent and Child § 48 (1987); 67A C.J.S. Parent and Child § 11 (1978). Hence, medical personnel can be found liable for treating a child without the consent of the parent, even where the child

---

**3.** The issue of whether distribution of condoms is a medical service or medical treatment is not relevant to our analysis of PUBS' standing to sue, nor is our discussion intended to express any opinion on that aspect of Policy 123.

appears to have consented. *See, e.g., Zaman v. Schultz,* 19 D & C 309 (1933) (parents recovered damages because blood was taken from their minor child without their express consent).

The legislature also has recognized the principle of express prior parental consent. There are numerous statutes which forbid or punish certain activities that may endanger minors and, therefore, require prior parental consent. *E.g.,* Section 6311 of the Crimes Code, 18 Pa.C.S. § 6311 (it is a misdemeanor to tattoo a minor without the prior consent of a parent).[4]

Parental consent is further recognized by the exceptions which have been carved out by the legislature, most notably the Minor's Consent to Medical, Dental and Health Services, Act of February 13, 1970, P.L. 19, 35 P.S. §§ 10101–10105, which enumerates the specific circumstances where express parental consent is not necessary for the administration of medical treatment. *See also* Section 1 of the Act of December 9, 1969, P.L. 333, *as amended,* 35 P.S. § 10001 (a minor under the age of seventeen cannot donate blood without the prior consent of a parent); Section 12 of the Pennsylvania Drug and Alcohol Abuse Control Act, Act of April 14, 1972, P.L. 221, *as amended,* 71 P.S. § 1690.112 (parental consent is not necessary for the treatment of substance abuse); Section 14.1 of the Disease Prevention and Control Law of 1955, Act of April 23, 1956, P.L. (1955) 1510, *as amended,* 35 P.S. § 521.14a (no liability attaches for the treatment of a minor for venereal disease). Our review of these statutes leads us to the conclusion that the principle that a parent must consent to certain activities prior to the commencement of those activities, while not an absolute right or without limit, is nevertheless a recognized and substantial interest that can be protected.

**4.** Evidence of parental approval is also required for more mundane activities, such as obtaining a driver's license, Section 1507 of the Vehicle Code, 75 Pa.C.S. § 1507, or a marriage license, Section 1304(b)(2) of the Domestic Relations Act, 23 Pa.C.S. § 1304(b)(2). Additionally, Miranda rights can not be waived unless a minor is permitted to consult with a parent or another interested adult party. *Commonwealth v. Stanton,* 466 Pa. 143, 351 A.2d 663 (1976).

The Board argues that PUBS has failed to allege any interest that is not common to the public at large in that they are only attempting to protect a general right to "raise their children in the way in which they see fit." We strongly disagree. PUBS has articulated a specific and substantial right which they perceive has been improperly limited by a specific action of the Board, *viz.* Policy 123. It is not relevant that it is an interest shared by all parents of Philadelphia schoolchildren. As Justice Potter Stewart observed, "[t]o deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973) (cited with approval of by the Pennsylvania Supreme Court in *William Penn Parking Garage).*

■ Next, PUBS contends that the trial court erroneously held that PUBS could not have standing because its interests were identical to those asserted by the individually-named plaintiffs. An organization, such as PUBS, may have standing to commence an action on behalf of its members. Such representation is particularly appropriate where, as here, there are a large number of potential parties. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment,* 145 Pa.Commonwealth Ct. 503, 604 A.2d 298 (1992). Thus, so long as an organization has at least one member who has or will suffer a direct, immediate, and substantial injury to an interest as a result of a challenged action, it has standing to sue. *Id.* PUBS asserts, and the Board does not challenge the fact, that many of its members are parents of children who attend Philadelphia public schools where Policy 123 has been implemented. Hence, PUBS as an organization is an appropriate entity to assert rights held by its individual members.

The trial court, however, improperly relied on our opinion in *Consumer Education Protective Association International, Inc. v. Philadelphia Water Department Commissioner,* 133 Pa.Commonwealth Ct. 148, 575 A.2d 160 (1990) (*CEPA* );

*aff'd.,* 528 Pa. 600, 600 A.2d 189 (1992). We held in *CEPA* that the association, Consumer Education Protective Association, had standing to appeal a rate determination for water and sewage because some of its members were water customers. We also held that an individual water customer had standing to attack the same determination. Therefore, *CEPA* is contrary to the trial court's position, and we can see no reason why PUBS should be excluded from representing the interests of its members whose children are Philadelphia public school students simply because its interests overlap with those of the individual plaintiffs.

In sum, PUBS has (1) identified a substantial interest, *i.e.* prior express parental consent to medical treatment; (2) which interest is directly affected by the action of the Board; and (3) the consequences of the Board's action affecting that interest are immediate. Accordingly, we hold that the trial court erred in dismissing PUBS complaint for lack of standing. The scope and boundaries of the injury alleged by PUBS and any privacy interests of the minors involved all relate to the merits of the case, and, of course, are not addressed here. We shall, therefore, remand this case to the trial court for proceedings on the merits.

### ORDER

AND NOW, August 5, 1994, the order of the Court of Common Pleas of Philadelphia County is hereby reversed, and this matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The individual parents and the organization, Parents United for Better Schools, Inc. (collectively, PUBS) appeal an order dismissing their complaint for lack of standing. I would affirm the trial court's decision that PUBS does not have standing to bring this action seeking injunctive and declaratory relief against the School District of Philadel-

phia Board of Education (School District) based on their alleged right to affirmatively consent to the distribution of condoms to their children under School District Policy 123 rather than "opt out" of the policy as provided by the School District.

Policy 123 provides, in conjunction with an abstinence-based curricula focused at preventing sexually transmitted diseases, for the availability of condoms to students upon request unless the parents of that student opt out of the program by returning a form stating that their child should not receive condoms. PUBS' parents have either exercised their prerogative to opt out or, because of their membership in PUBS, have been treated by the School District as if they had returned the opt-out form vetoing any distribution to their children.[1]

Despite the fact that their children will not be receiving any condoms because they are opted out, PUBS argues that the parents have a particularized right to consent rather than to veto health services available to their children. However, as a result of the parents opting out, if one of their children requests a condom from health services, the child will be required to get his or her parents' affirmative consent to receive the condom. Therefore, the procedures in effect for the children of PUBS' parents is exactly the same procedure they request be invoked as a result of this suit. Because the parents are treated as opting-out of the program, the only possible remedy available to them is to limit the access of other people's children to the condoms.

In *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), the Supreme Court set forth the standard for standing to bring an action. Generally, in order to have standing, a person must be "aggrieved"

---

1. In its opinion, the trial court summarized the facts: "five hundred and thirty-three (533) parents, including most of the plaintiffs, completed (and returned) opt-out forms. Meanwhile, the Board, sensibly, I think, took the stance that those parent-plaintiffs who have not as yet completed an opt-out form, do not, in fact, want their children to receive condoms. Without approval, none of the parent-plaintiffs' children are entitled to obtain condoms at school." Trial court opinion at 4 (footnote and emphasis omitted).

or adversely affected by the matter he seeks to challenge. The party bringing an action must have a direct interest in the particular question litigated and that interest must also be immediate and substantial. *Id.* For a party to maintain a challenge to an official action, his or her rights must have been invaded or infringed. *Sierra Club v. Hartman,* 529 Pa. 454, 605 A.2d 309 (1992).

PUBS must have alleged a direct, substantial and immediate interest in the results of the suit or they do not have standing. Their alleged interest is their parental right to affirmatively consent to services requested by their child. Because PUBS' parents have opted out or are treated as if they opted out, their children are not eligible to receive condoms or could be eligible only if they obtain affirmative consent from their parents. The alleged parental right to affirmatively consent is thereby provided to PUBS' parents just as if Policy 123 had stated that students would not receive condoms except with affirmative consent by their parents at the time of the request. Because PUBS' parents have the parental right to preclude distribution to their children without affirmative consent, by exercising the opt-out provision, there is no right that is invaded or infringed by the policy. Moreover, PUBS does not have an interest in whether other people's children will receive condoms because their parents chose not to opt out of the program. Accordingly, I would affirm the order of the trial court denying standing.[2]

FRIEDMAN, J., joins in this dissent.

---

**2.** Although not raised, this case may be moot because this court cannot practically award any effective relief to the parties because they already are provided the right to affirmatively consent at the time of a request through the opt-out provision. *See Metro Transportation Company v. Pennsylvania Public Utility Commission,* 128 Pa.Commonwealth Ct. 223, 563 A.2d 228 (1989).