761 A.2d 1151

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dennis E. NIXON, Appellant.**

**Commonwealth of Pennsylvania, Appellee,**

v.

**Lorie A. Nixon, Appellant.**

Supreme Court of Pennsylvania.

Argued March 7, 2000.

Decided Nov. 27, 2000.

Robert E. Stewart, Pittsburg, for appellants, Dennis and Lorie Nixon.

David Gorman, Hollidaysburg, for the Com.

Peter N. Georgiades, Pittsburgh, James G. Dwyer, Chicago, IL, for Amicus–Child.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

We granted allocatur for this Court to consider two issues. First, we consider whether to adopt a "mature minor doctrine" which would be an affirmative defense to the parental duty to provide care to a minor. Secondly, we consider whether Shannon Nixon had a right to refuse medical care pursuant to her privacy rights under the constitutions of the United States and this Commonwealth. For the reasons that follow, we choose not to adopt a "mature minor doctrine" as a criminal defense and further, we find that Shannon Nixon's constitutional right to privacy did not relieve her parents from fulfilling their statutory obligations. Therefore, we affirm the order of the Superior Court, which, in turn, affirmed the order and judgment of sentence of the Court of Common Pleas of Blair County.

This case arose from the following facts. Dennis and Lorie Nixon, Appellants, were the parents of the victim, Shannon Nixon. Shannon Nixon was sixteen years old at the time of her death. In mid-June 1997, it became obvious to Appellants that Shannon was not feeling well. Appellants began to pray for their daughter's health. They also took her to their place of worship where Shannon was "anointed".[1] Shannon initially

---

[1] Appellants and their children were members of the Faith Tabernacle Church, a religion in which illnesses are addressed through spiritual treatment rather than by medicine.

reported feeling somewhat better, but then her condition deteriorated. She became increasingly weak and fell into a coma. After a few hours in a comatose state, Shannon Nixon died. An autopsy determined that Shannon died from diabetes acidosis, which was a treatable, though not curable, condition.

Appellants were convicted of involuntary manslaughter, 18 Pa.C.S. § 2504, and also of endangering the welfare of a child under 18 Pa.C.S. § 4304. These statutes respectively state:

**Involuntary manslaughter**

(a) **General rule.**—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

**Endangering welfare of children**

(a) **Offense defined.**—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

Appellants' first argument is that we should adopt a "mature minor doctrine" and allow Appellants to assert such doctrine as an affirmative defense to the endangering welfare of children charge. If the affirmative duty created by 18 Pa.C.S. § 4304 was removed from Appellants, then it follows that the involuntary manslaughter conviction would also fall. This is because the Commonwealth used § 4304 to show an unlawful act, one of the alternative prerequisites to § 2504.

By placing an affirmative duty upon parents and guardians, the legislature has acted to partially fulfill the Commonwealth's duty to care for those individuals who for one reason or another are legally incapacitated. This duty to care for those who are legally incapacitated arose under the sovereign's duty of *parens patriae,* and following independence was assumed by the individual states. *See Commonwealth v. Baldwin,* 54 Watts 1 (Pa.1832). By mandating primary responsibility for the child's wellbeing upon the parents, the

legislature has not only acted toward fulfilling its role as *parens patriae,* but also has recognized that parents have a duty to provide for their children which accompanies the right to raise children with minimal state encroachment. As the United States Supreme Court stated:

It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter. But the family itself is not beyond regulation in the public interest, as against a claim or religious liberty. And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter ill health or death.

*Prince v. Commonwealth of Massachusetts,* 321 U.S. 158, 166–67, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (citations and footnotes omitted).

The Appellants argue that their daughter was mature enough to make her own decisions regarding health care and religion, and therefore ask us to create an exception to their obligation on the basis of their daughter's maturity. In defining the mature minor doctrine, Appellants refer us to a decision from our sister state of Tennessee which stated:

Whether a minor has the capacity to consent to medical treatment depends upon age, ability, experience, education, training and degree of maturity or judgment obtained by the minor or, as well as upon the conduct and demeanor of

the minor at the time of the incident involved. Moreover, the totality of the circumstances, the nature of the treatment and its risks and probable consequences, and the minor's ability to appreciate the risk and consequences are to be considered.

*Cardwell v. Bechtol,* 724 S.W.2d 739, 748 (Tenn.1987). *See also Belcher v. Charleston Area Medical Center,* 188 W.Va. 105, 422 S.E.2d 827 (1992), and *In re E.G.,* 133 Ill.2d 98, 139 Ill.Dec. 810, 549 N.E.2d 322 (1989).

This doctrine is not the legal equivalent of emancipation, for an emancipated minor assumes all legal responsibility for his or herself. Thus, in the situation of an emancipated minor, the legal duty to provide care is no longer applicable. There is no indication in argument or record that Shannon Nixon was emancipated. Rather, she lived in Appellants' home and did not assert her independence from Appellants in a manner which would lead to a finding of emancipation. *See Nicholason v. Follweiler,* 735 A.2d 1275, 1278 (Pa.Super.1999); *Ross v. Commonwealth of Pennsylvania, Department of Public Welfare,* 60 Pa.Cmwlth. 403, 431 A.2d 1135, 1138 (1981); and *Detwiler v. Detwiler,* 162 Pa.Super. 383, 57 A.2d 426 (Pa.Super.1948).

■ We believe that, without passing comment upon the wisdom of the mature minor doctrine itself, a terse review of the facts and circumstances which confronted the courts of our sister states readily reveals why the doctrine is not applicable to Appellants' case.

In *Cardwell v. Bechtol,* the Supreme Court of Tennessee addressed the issue in the context of a civil medical malpractice suit, under that state's common law of torts. The defendant, a licensed osteopath, performed spinal manipulations on a 17–year–old woman, without the consent of her parents. After complications arose, her parents brought suit against the osteopath for a variety of complaints related to the failure to obtain proper informed consent. As a defense, the osteopath asserted that the young woman was competent to, and actually did give informed consent for the procedure that he

performed. The Tennessee court agreed with the defendant, and adopted the mature minor exception, as defined above.

In *Belcher v. Charleston Area Medical Center*, the Supreme Court of Appeals of West Virginia also adopted a version of the mature minor doctrine. That court addressed the doctrine in the context of a wrongful death suit, where the plaintiffs asserted that their son, a 17–year–old man with muscular dystrophy, should have been consulted prior to his doctor's withholding medical treatment from him due to a "Do Not Resuscitate" order which had been requested by his parents. When the young man had a respiratory arrest and cardiac failure, the hospital staff attempted to revive him only with the minimal procedures allowed by a "Do Not Resuscitate" order. That court held that

> except in very extreme cases, a physician has no legal right to perform a procedure upon, or withhold treatment from a patient without the patient's consent, nor upon a child without the consent of the child's parents or guardian, unless the child is a mature minor, in which case the child's consent would be required. Whether the child has the capacity to consent depends upon the age, ability, experience, education, training, and degree of maturity or judgment obtained by the child, as well as upon the conduct and demeanor of the child at the time of the procedure or treatment. The factual determination would also involve whether the minor has the capacity to appreciate the nature, risks, and consequences of the medical procedure to be performed, or the treatment to be administered or withheld.

*Belcher*, 422 S.E.2d at 838.

Finally, Appellants bring the case of *In re E.G., a Minor*, 133 Ill.2d 98, 139 Ill.Dec. 810, 549 N.E.2d 322 (1989), to our attention. The Supreme Court of Illinois held there that

> [t]he common law right to control one's health care was also the basis for the right of an incompetent patient to refuse life-sustaining treatment through a surrogate.... We see no reason why this right of dominion over one's own person should not extend to mature minors.

139 Ill.Dec. 810, 549 N.E.2d at 326. The rationale of the Illinois court demonstrates the limitations of the doctrine. As the Illinois court stated,

> [t]he trial judge must determine whether a minor is mature enough to make health care choices on her own. An exception to this, of course, is if the legislature has provided otherwise, as in the Consent by Minor to Medical Operations Act. We feel the intervention of a judge is appropriate for two reasons.
>
> First, Illinois public policy values the sanctity of life. When a minor's health and life are at stake, this policy becomes a critical consideration. A minor may have a long and fruitful life ahead that an immature, foolish decision could jeopardize. Consequently, when the trial judge weighs the evidence in making a determination of whether a minor is mature enough to handle a health care decision, he must find proof of this maturity by clear and convincing evidence.
>
> Second, the State has a parens patriae power to protect those incompetent to protect themselves. "[I]t is well-settled that the State as parens patriae has a special duty to protect minors and, if necessary, make vital decisions as to whether the condition is life threatening, as wrenching and distasteful as such actions may be." The State's parens patiae power pertaining to minors is strongest when the minor is immature and thus incompetent (lacking capacity) to make these decisions on her own. The parens patriae authority fades, however, as the minor gets older and disappears upon her reaching adulthood. The State interest in protecting a mature minor in these situations will vary depending upon the nature of the medical treatment involved. Where the health care issues are potentially life threatening, the State's parens patriae interest is greater than if the health care matter is less consequential.

139 Ill.Dec. 810, 549 N.E.2d at 327 (citations omitted).

We find the current case to have a crucial distinction from

the cases relied upon by Appellants.[2],[3] The legislature of this Commonwealth has provided a statute which identifies those minors who are deemed sufficiently mature to give consent to medical treatment.

Any minor who is eighteen years of age or older, or has graduated from high school, or has married, or has been pregnant, may give effective consent to medical, dental and health services for himself or herself, and the consent of no other person shall be necessary.

Act of Feb. 13, 1970, P.L. 19, No. 10, § 1, 35 P.S. § 10101. Our legislature, as Appellants assert, has created several other situations where a minor may give lawful consent for medical treatment. *See* Act of April 14, 1972, P.L. 221, No. 63 § 12, 71 P.S. § 1690.112 (minors may consent to diagnosis or treatment when suffering from the use of controlled or harmful substances); Act of April 23, 1956 P.L. (1955) 1510 § 14, 35 P.S. § 521.14 (allows minors to consent to the treatment of venereal disease); and Act of Dec. 9, 1969 P.L. 333, § 1 *as amended*, 35 P.S. § 10001 (allows minors over 17 years old to voluntarily donate blood without parental consent) *but cf.* 18 Pa.C.S. § 3206(c) (requires a minor to petition court for consent to an abortion when the parents do not consent; before giving such consent, the court must ascertain that the minor is mature and capable of giving informed consent).

We agree that these statutes create specific exceptions to the general rule of incapacity. The statutes do not, contrary to Appellants' assertion, show a legislative intent that any minor, upon the slightest showing, has capacity either to consent to or to refuse medical treatment in a life and death situation. We therefore hold that the maturity of an uneman-

---

**2.** Because we find that an affirmative duty was statutorily placed upon Appellants, we need only note that this Court has indicated that, "[t]he **inherent** dependency of a child upon his parent to obtain medical aid, i.e., the incapacity of a child to evaluate his condition and summon aid himself, supports imposition of such a duty upon the parent." *Commonwealth v. Konz,* 498 Pa. 639, 450 A.2d 638, 641 (1982)(emphasis added).

**3.** Appellants fail to cite, and our own research fails to reveal any cases from our sister states which hold that the doctrine espoused by Appellants is viable as a defense in a criminal case.

434

cipated minor is not an affirmative defense applicable to the charges brought against Appellants.[4]

Appellants' second argument is that the parental duty to provide medical care was negated by Shannon Nixon's privacy interests under the constitutions of the United States and Pennsylvania.[5] This Court has acknowledged that both constitutions do offer protections of personal privacy, which results from the "penumbra" of articulated rights. *See In re "B"*, 482 Pa. 471, 394 A.2d 419 (1978). The Pennsylvania Constitution encompasses "the right to be let alone." *Stenger v. Lehigh Valley Hospital Center*, 530 Pa. 426, 609 A.2d 796 (1992). The difference between the two constitutions is in the tests involved in determining if a violation of privacy has occurred. In order to determine if a violation of the United States Constitution has occurred, a flexible balancing approach is employed with increasing levels of scrutiny corresponding to increasing levels of confidentiality intrusions. *See id.* at 801. On the other hand, under Pennsylvania's constitution, while the right to privacy is not absolute, we do not apply a flexible approach. In this Commonwealth, only a compelling state interest will override one's privacy rights. *Id.* at 802, *citing Fabio v. Civil Service Commission of the City of Philadelphia*, 489 Pa. 309, 414 A.2d 82 (1980).

A compelling interest in the welfare of minors may impinge upon the constitutional rights of both minors and adults simultaneously. In *Commonwealth v. Wormser*, 260 Pa. 44, 103 A. 500 (1918), this Court examined whether a criminal prosecution could stand for the crime of employing a minor at night and without a certificate. As a defense, the appellant

4. We note that our Superior Court has held, that "even if [the minor victims] were considered mature enough to freely exercise their religious beliefs, it does not dispel [the parents'] duty while the children are in their care, custody, and control to provide them with parental care, direction and sustenance." *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988 (1992).

5. Neither the Commonwealth nor Appellants have addressed whether parents of a deceased minor have standing to assert the minor's constitutional rights as a bar to prosecution of their own criminal behavior. In the present circumstances, we decline to address this question *sua sponte.*

argued that such a criminal prosecution infringed upon his, and the minor's, constitutional right to contract. We stated,

[t]he statute in question was enacted under the general police power of the Commonwealth. Its object is declared to be "to provide for the health, safety, and welfare of minors," and it is too clear for discussion that this is an appropriate subject for legislative action not only in the exercise by the Commonwealth of its authority as parens patriae but also of the inalienable power to enact such laws as promote the health, morals and general welfare of the people.

260 Pa. at 46, 103 A. at 501.

■ As we find that the state's interest as *parens patriae* in the very life of an unemancipated minor is a compelling interest, and the imposition of a parental duty to provide care for a minor in their custody is an appropriate subject for legislative action, we need not to examine this constitutional question further. Additionally, as we find that Pennsylvania's Constitution is more protective of privacy than the United States Constitution, an analysis of that jurisprudence is unnecessary.

In summary, we hold that the mature minor doctrine suggested by Appellants is not an applicable defense in this case. We also hold that Appellants' convictions are not an unconstitutional violation of the victim's right to privacy. We therefore affirm the order of the Superior Court.[6]

Justice CAPPY files a concurring opinion.

CAPPY, Justice, concurring.

From my review of the record, it is evident that Shannon Nixon did not have the maturity to make an informed decision regarding medical treatment. Thus, I concur in the majority's

6. We note that Superior Court addressed various constitutional arguments regarding convictions under 18 Pa.C.S. § 2504 and § 4304 in *Commonwealth v. Barnhart,* 345 Pa.Super. 10, 497 A.2d 616 (1985) and *Commonwealth v. Cottam,* 420 Pa.Super. 311, 616 A.2d 988 (1992). We have not addressed many of the issues presented in those cases and will not do so here, as the parties do not raise them.

result, which affirms the order of the Superior Court, upholding the trial court's judgment of sentence. I write separately, however, because I do not agree with the majority's characterization of the question that appellants raised for our consideration or with the majority's view of the role that legislative intent should play in this case or with the majority's ultimate decision to reject the mature minor doctrine.[1]

The question raised in this appeal—did Shannon Nixon, even though a minor, have the right to refuse medical attention—is of weighty import, and involves a matter which has "deep roots in our common law." *In re Fiori*, 543 Pa. 592, 673 A.2d 905, 909 (1996). In Pennsylvania, the control of one's own person and the right of self-determination are closely guarded through the principle of informed consent, which declares that absent an emergency, medical treatment may not be imposed without a person's permission. *Id.* The right to refuse treatment or to withdraw treatment once it has begun is a logical corollary to that principle. *Id.*

Under the common law, a minor is deemed incompetent to provide informed consent. *Parents United for Better Schs., Inc. v. School Dist. of Phila. Bd. of Educ.*, 166 Pa.Cmwlth. 462, 646 A.2d 689, 691 (1994). Until the age of majority, a minor's parents make medical treatment decisions on his or her behalf. *Id.* The Pennsylvania legislature, however, has rendered the authority of parents to speak for their minor child with respect to health care less than absolute in certain circum-

---

1. I found the majority opinion ambiguous. When I read the majority's statement on page 5 of its opinion that "[w]e believe that, without passing comment on the wisdom of the mature minor doctrine itself, a terse review of the facts and circumstances which confronted the courts of our sister states readily reveals why the doctrine is not applicable to Appellants' case", I was given to believe that the majority had decided not to determine, one way or the other, whether the doctrine would be adopted in Pennsylvania. If this had been the case, then the better course of action would have been the dismissal of this appeal as improvidently granted, rather than the issuance of an opinion containing dicta. It was after some deliberation of the majority's discussion of the statutory exceptions to the general rule of minor incapacity on pages 7 and 8 of its opinion, that I concluded that the majority has evaluated the doctrine and determined that it will not be part of our common law under any circumstances.

stances, by enacting several statutes that allow minors to speak for themselves. Under 35 P.S. § 10101, a minor who is eighteen or older or graduated from high school or who has married or has been pregnant, may consent to health care treatment; under 35 P.S. § 10001, a minor who is seventeen years of age or older may donate blood in any voluntary, non-compensatory program without parental permission; under 35 P.S. § 10103 and 35 P.S. § 521.14(a), a minor who may be pregnant or infected with a venereal disease may seek and receive treatment; under 71 P.S. § 1690.112, a minor who suffers from use of a controlled or harmful substance may consent to the furnishing of medical care or counseling; and finally, under 18 Pa.C.S. § 3206(c), a minor who proves in the court of common pleas that she is mature and capable of giving informed consent may consent to and obtain an abortion.

These statutes are at the heart of the majority's holding. The majority states:

> [These] statutes create specific exceptions to the general rule of incapacity. The statutes do not, contrary to Appellants' assertion, show a legislative intent that any minor, upon the slightest showing, has capacity either to consent to or to refuse medical treatment in a life and death situation. We therefore hold that the maturity of an unemancipated minor is not an affirmative defense applicable to the charges brought against Appellants.

Majority opinion at 1155.

While the majority and I agree that these statutes provide "specific exceptions" to the general precept that minors are legally incapable of informed consent, the majority and I part company in several respects.

First, I believe that the majority's characterization of appellants' position is inaccurate. In my view, appellants did not assert that a minor upon the "slightest showing" of capacity should be permitted to consent to or to refuse health care treatment or premise application of the mature minor doctrine on a "life and death situation." Instead, appellants argued

that "a minor of demonstrated maturity" or "[a] minor who is able to demonstrate the requisite maturity" "should have the ability to make determinations as to medical care." (Brief for Appellants, pp. 11–12.).

Second, I do not believe that legislative intent should have the decisive role in the case *sub judice* that the majority apparently gives it. The majority's holding against recognition of the mature minor doctrine is expressly and exclusively premised on the intent with which the legislature enacted its statutory exceptions to the general rule of parental consent. While it is certainly proper and advisable for this court to take note of relevant statutory authority in assessing the wisdom of the doctrine, and to strive for a judicial pronouncement that is consistent with that authority, *see Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897, 904, 905 (1979), it is not appropriate to give it a dispositive role. Except where the legislature has established a comprehensive statutory scheme, aimed at occupying an entire area, this court is guided, not directed, by legislative action. *Id.*

Lastly, I, unlike the majority, would recognize the mature minor doctrine. Indeed, the same statutes that inform the majority's rejection of the doctrine lead me to the opposite result. I agree with the legislature's willingness to make appropriate exceptions to the rule of minor incapacity in the first place and with the policies reflected in the exceptions the legislature has seen fit to enact. By their terms, the exceptions fall into two broad categories: those that are premised on a specific medical condition that ought to be treated and those that focus on a minor's status. With regard to the latter, the legislature has decided, for example, that turning eighteen, marrying, becoming a parent or graduating from high school are indicative of one's readiness to make health care decisions on one's own. 35 P.S. § 10101.

In the same way, I believe that when it is demonstrated that a minor has the capacity to understand the nature of his or her condition, appreciate the consequences of the choices he or she makes, and reach a decision regarding medical intervention in a responsible fashion, he or she should have the right

to consent to or refuse treatment. I would, therefore, adopt the mature minor doctrine.

The record falls far short of establishing that Shannon Nixon met this standard. Accordingly, I concur in the majority's result.[2]

2. Because I conclude that the mature minor doctrine does not apply in this case as a matter of fact, I decline to address appellants' contention that the doctrine provides them with an "affirmative defense" to the charges the Commonwealth brought against them. Because I would find that under the common law, a mature minor may consent to or refuse medical treatment, I would not reach, and I express no opinion on, the privacy issue appellants raise under the United States and Pennsylvania Constitutions. *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 723 A.2d 174, 176 (1999).