# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Americans for Fair Treatment, Inc.,   :
    :
      Appellant    :
    :
      v.      : No. 1618 C.D. 2015
    : Argued: October 17, 2016
Philadelphia Federation of Teachers,   :
Local 3, AFL-CIO; The School   :
District of Philadelphia; and School   :
Reform Commission    :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**          **FILED:  November 21 , 2016**

This matter is an appeal filed by Americans for Fair Treatment, Inc. (Plaintiff) from orders of the Court of Common Pleas of Philadelphia County (trial court) dismissing Plaintiff's amended complaint for declaratory judgment and injunctive relief (Amended Complaint) for lack of standing.  For the reasons set forth below, we affirm.

On February 25, 2015, Plaintiff filed a complaint against Philadelphia Federation of Teachers, Local 3, AFL-CIO (Union) and the School District of Philadelphia (School District) challenging the union leave of absence provision in the 2010 collective bargaining agreement between the Union and the School District (the 2010 CBA).  Both defendants filed preliminary objections to the complaint.  On May 22, 2015, Plaintiff, in response to the preliminary objections, filed the Amended Complaint at issue here, a six-count complaint  that added the School Reform Commission (SRC) as a defendant and sought a declaratory

judgment that the union leave of absence provision in the 2010 CBA is invalid, an injunction barring the School District and SRC (collectively, School District) and the Union from continuing to implement that provision of the 2010 CBA and a declaratory judgment that a union leave provision in the Public School Employees' Retirement Code (PSERC)[1] is unconstitutional under the Pennsylvania Constitution to the extent that it authorizes the union leave provided by the 2010 CBA.

According to the Amended Complaint, Plaintiff is an Oklahoma nonprofit corporation with "members throughout the country" that "facilitate[s] and support[s] litigation to enforce and expand human and civil rights of employees who have suffered public sector union abuse," and its "membership includes public sector union members and nonmembers, as well as supporters of public employees." (Amended Complaint ¶1, Reproduced Record (R.R.) at 14a-15a.) The Amended Complaint alleges that "Plaintiff's membership rolls include Philadelphia teachers with less accrued seniority than many of the teachers who have left the classroom to perform union work on school time," and that "Plaintiff's membership rolls also include Philadelphia taxpayers whose taxes fund Philadelphia schools." (*Id.* ¶¶7-8, R.R. at 16a.) The Amended Complaint does not identify any member who is a Philadelphia teacher or taxpayer and does not allege any facts concerning the positions that its Philadelphia teacher members hold, the schools where they teach or the subjects or positions for which they are certificated. The Amended Complaint also does not allege what School District seniority its Philadelphia teacher members have other than asserting that they have less seniority than many teachers on union leave.

---

[1] 24 Pa. C.S. §§ 8101-8535.

2

The Amended Complaint seeks to declare invalid and enjoin Article III, Section B of the 2010 CBA, which provides:

> 1. Employees who are elected or appointed to full time positions with the Federation or any organization with which it is affiliated will, upon proper application, be granted leaves of absence for the purpose of accepting those positions. Authorized Federation leaves shall be requested in writing by the President of the Federation only. Employees granted such leaves of absence shall retain all insurance and other benefits and shall continue to accrue seniority as though they were in regular service. Annually, the President of the Federation shall inform the School District of the salary to be paid to each employee on approved leave with the Federation. The School District shall adjust each employee's salary accordingly. Upon return to service they shall be placed in the assignment which they left with all accrued benefits and increments that they would have earned had they been in regular service.
>
> 2. Employees on such leaves of absence shall be permitted to pay both their and the School District's regular contributions to all plans requiring such contributions.

(Amended Complaint ¶¶20-27, Prayer for Relief & Ex. A, R.R. at 18a-20a, 31a, 49a.) Article III, Section B of the 2010 CBA permits up to 35 teachers and 26 other bargaining unit employees to take this union leave to hold full time positions with the Union. (*Id.* ¶27 & Ex. A ¶5, R.R. at 19a-20a, 49a-50a.) In addition, Article XIII, Section F of the 2010 CBA permits up to 10 teachers or other members of the Union to take union leave to hold full time positions with the Union's Health and Welfare Fund. (*Id.* ¶20 n.4 & Ex. A, R.R. at 18a, 89a.) Plaintiff alleges that at least 19 School District employees are on union leave and that "many" of the teachers on union leave have been on union leave for over 15 years. (*Id.* ¶¶7, 26, R.R. at 16a, 19a.) The information from the School District on which Plaintiff bases these allegations lists all of the employees on union leave as

3

having been employed by the School District for more than 10 years. (*Id.* Ex. C, R.R. at 258a-259a.)

The 2010 CBA provided that it was to be in effect from September 1, 2009 to August 31, 2012. (Amended Complaint ¶14 & Ex. A, R.R. at 17a, 34a, 36a.) The Union and School District extended the 2010 CBA for an additional year, to August 31, 2013. (*Id.* ¶15, R.R. at 17a; CBA Extension Agreement, R.R. at 415a-416aa.) The Amended Complaint alleges that the 2010 CBA expired on August 31, 2013, but that the Union and School District have continued to adhere to its terms because no successor agreement has been reached. (Amended Complaint ¶16, R.R. at 18a.) In October 2014, the School District attempted to cancel the 2010 CBA. (*Id.* ¶17, R.R. at 18a.) That cancelation was enjoined as beyond the SRC's powers and on August 15, 2016, the Pennsylvania Supreme Court upheld the injunction. *See Philadelphia Federation of Teachers, AFT, Local 3, AFL-CIO v. School District of Philadelphia*, 144 A.3d 1281 (Pa. 2016).

The Amended Complaint also seeks a declaration that Section 8102 of the PSERC is unconstitutional to the extent that it authorizes union leave. (Amended Complaint ¶¶84-97, R.R. at 29a-30a.) The PSERC provides that school employees receive credit in calculating their retirement benefits for periods that they are on "approved leave of absence," if retirement contributions are made for the leave of absence periods. 24 Pa. C.S. § 8302(b). Section 8102 provides that union leave constitutes "approved leave of absence" for which school employees receive retirement credit if the union leave satisfies the following conditions:

> "Leave for service with a collective bargaining organization." Paid leave granted to an active member by an employer for purposes of working full time for or serving full time as an officer of a Statewide employee organization or a local collective bargaining representative under the act of July 23, 1970 (P.L. 563, No. 195), known as the Public Employe

4

> Relations Act: Provided, That greater than one-half of the members of the employee organization are active members of the system; that <u>the employer shall fully compensate the member, including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service; and that the employee organization shall fully reimburse the employer for such salary, wages, pension and retirement contributions and benefits and other benefits and seniority</u>.

24 Pa. C.S. § 8102 (emphasis added).

The 2010 CBA provides only that the Union "shall inform the School District of the salary to be paid to each employee on approved leave" and that the "School District shall adjust each employee's salary accordingly" and does not expressly require the Union to reimburse the School District. In the past, the School District has paid the salaries of the teachers on union leave and the Union has fully reimbursed the School District for all salary and benefits for teachers on union leave in accordance with Section 8102's requirements for pension credit. *Kirsch v. Public School Employees' Retirement Board*, 985 A.2d 671, 672-73 (Pa. 2009). Plaintiff does not allege that the Union has failed to fully reimburse the School District for all salary and benefit payments for those on union leave under the 2010 CBA. (School District Preliminary Objections ¶4, R.R. at 340a; Plaintiff's Answer to School District Preliminary Objections ¶4, R.R. at 607a.) Under the PSERC, only the salary to which employees on union leave would be entitled in their school positions can be included in calculating retirement benefits even if the employees are paid a higher salary while on union leave. *Kirsch*, 985 A.2d at 675-78.

The Union and School District filed preliminary objections to the Amended Complaint seeking dismissal both on the grounds that Plaintiff lacks standing and on the grounds that the individual counts of the Amended Complaint

5

were legally insufficient. On July 22, 2015, the trial court issued orders sustaining defendants' preliminary objections to Plaintiff's standing. On August 17, 2015, Plaintiff timely appealed the orders sustaining defendants' preliminary objections to this Court.[2] In its Pa. R.A.P. 1925(b) statement of errors complained of on appeal, Plaintiff contended only that the allegations of the Amended Complaint were sufficient to support standing and did not assert that the trial court should have granted it leave to amend to plead any additional facts in support of standing. (R.R. at 677a-678a.)

To have standing to seek judicial relief, the plaintiff must show that it is aggrieved by the action or matter that it challenges. *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009); *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659-60 (Pa. 2005). A plaintiff is aggrieved only if it is adversely affected and has a substantial, direct and immediate interest in the matter at issue. *Fumo*, 972 A.2d at 496; *Pittsburgh Palisades Park, LLC*, 888 A.2d at 660. To be "substantial," the plaintiff's interest must be distinct from and surpass the interest of all citizens in procuring compliance with the law. *Fumo*, 972 A.2d at 496; *Pittsburgh Palisades Park, LLC*, 888 A.2d at 660; *North-Central Pennsylvania Trial Lawyers Association v. Weaver*, 827 A.2d 550, 554 (Pa. Cmwlth. 2003). For the interest to be "direct," there must be a causal connection between harm to the plaintiff's interest and the alleged violation of law that is the subject of the action. *Fumo*, 972 A.2d at 496; *Pittsburgh Palisades Park, LLC*,

---

[2] Whether Plaintiff has standing is a question of law subject to this Court's plenary, *de novo* review. *Office of the Governor v. Donahue*, 98 A.3d 1223, 1228 (Pa. 2014); *Johnson v. American Standard*, 8 A.3d 318, 326 (Pa. 2010). Because the trial court dismissed the action on preliminary objections, this Court must accept all well-pleaded material facts set forth in the Amended Complaint and all inferences fairly deducible from those facts as true, but need not accept Plaintiff's conclusions of law or argumentative allegations. *Stilp v. Commonwealth*, 940 A.2d 1227, 1232 n. 9 (Pa. 2007).

888 A.2d at 660; *National Rifle Association v. City of Pittsburgh*, 999 A.2d 1256, 1258 (Pa. Cmwlth. 2010). The interest is "immediate" if the causal connection is not remote or speculative. *Fumo*, 972 A.2d at 496; *Pittsburgh Palisades Park, LLC*, 888 A.2d at 660; *National Rifle Association*, 999 A.2d at 1258.

An association has standing to bring an action on behalf of its members where at least one of its members is suffering an immediate or threatened injury as a result of the challenged action. *Robinson Township v. Commonwealth*, 83 A.3d 901, 922 (Pa. 2013); *North-Central Pennsylvania Trial Lawyers Association*, 827 A.2d at 554; *Pennsylvania Social Services Union, Local 668 v. Department of Public Welfare, Office of Inspector General*, 699 A.2d 807, 810 (Pa. Cmwlth. 1997); *National Solid Wastes Management Association v. Casey*, 580 A.2d 893, 899 (Pa. Cmwlth. 1990). This rule applies equally to nonprofit membership corporations. *Parents United for Better Schools, Inc. v. School District of Philadelphia*, 646 A.2d 689, 690, 692 (Pa. Cmwlth. 1994); *Concerned Taxpayers of Allegheny County v. Commonwealth*, 382 A.2d 490, 493-94 (Pa. Cmwlth. 1978).

To have standing on this basis, the plaintiff organization must allege sufficient facts to show that at least one of its members has a substantial, direct and immediate interest. *Pennsylvania Social Services Union, Local 668*, 699 A.2d at 810; *National Solid Wastes Management Association*, 580 A.2d at 899; *Concerned Taxpayers of Allegheny County*, 382 A.2d at 493-94. General descriptions of an organization's members cannot establish standing if they do not show that a member or members are sufficiently adversely affected to have standing. *Compare Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390, 398, 400 (Pa. Cmwlth. 2015) (*en banc*) (allegation that organization's "members live within one to three blocks of the proposed sign" was inadequate to establish

7

standing to challenge the sign) *and Concerned Taxpayers of Allegheny County*, 382 A.2d at 494 (allegation that members were residents and citizens of Pennsylvania was inadequate to establish standing to challenge constitutionality of statute governing payment of state officials) *with Robinson Township*, 83 A.3d at 922 (organization had standing where it submitted affidavits showing that members resided in or owned property in zoning districts directly affected by the statute that it challenged) *and National Solid Wastes Management Association*, 580 A.2d at 899 (organization had standing to seek declaratory judgment where it pleaded that its members had filed permit applications that were directly affected by the challenged order). Where the organization has not shown that any of its members have standing, the fact that the challenged action implicates the organization's mission or purpose is not sufficient to establish standing. *Armstead*, 115 A.3d at 399-400; *Concerned Taxpayers of Allegheny County*, 382 A.2d at 494.

Plaintiff argues that the dismissal of its action must be reversed because the trial court required it to disclose the identity of a specific member or members and because it alleged sufficient facts to establish that its teacher members have standing and to assert taxpayer standing. We do not agree.

Contrary to Plaintiff's contentions, the trial court did not hold that Plaintiff was required to identify members by name to show standing. Rather, the trial court held that the Amended Complaint

> provides no specific Philadelphia teachers or taxpayers in its membership rolls nor presents any facts as to how these members or the association are directly harmed by the collective bargaining agreement being challenged. The facts as alleged in the Amended Complaint are insufficient to establish that [Plaintiff] or its members would be directly aggrieved by the collective bargaining agreement.

8

(Trial Court Op. at 4.) Thus, the trial court dismissed the Amended Complaint for lack of standing not because Plaintiff failed to identify its aggrieved members, but because it failed to plead sufficient facts, whether by identification or description of the allegedly aggrieved members, from which it could be determined that those members had standing.

The trial court's legal analysis was correct. Dismissal for lack of standing is proper where the plaintiff organization neither identifies its affected members nor pleads sufficient facts to permit a court to determine that they have a substantial, direct and immediate interest. *Lincoln Party by Robinson v. General Assembly*, 682 A.2d 1326, 1330 (Pa. Cmwlth. 1996) (plaintiff organization failed to show that it had standing where it did not "set forth the nature of its membership or the names of any of its members" and "neglect[ed] to identify <u>any</u> of its members") (emphasis in original); *Eastern Pennsylvania Citizens Against Gambling v. Pennsylvania Gaming Control Board*, (Pa. Cmwlth., No. 1912 C.D. 2013, filed Nov. 10, 2014), slip op. at 10, 2014 WL 10298868 at *5 (community organization lacked standing where its filings "do not identify any member … or set forth any individualized interest of its members").[3] Standing may be shown without identification of individual members, but only where the complaint's description of the organization's members is sufficient to show that they are aggrieved. *See North-Central Pennsylvania Trial Lawyers Association*, 827 A.2d at 555 (association alleged that its membership included Pennsylvania medical malpractice attorneys and challenged statute directly affected Pennsylvania medical malpractice attorneys); *Narcotics Agents Regional Committee v. American*

---

[3] Because it is an unreported decision, *Eastern Pennsylvania Citizens Against Gambling* is not binding precedent, but is considered by the Court for its persuasive value. 210 Pa. Code § 69.414(a).

*Federation of State, County and Municipal Employees*, 780 A.2d 863, 870 (Pa. Cmwlth. 2001) (association represented all employees who were affected by defendant's actions); *Pennsylvania Social Services Union, Local 668*, 699 A.2d at 810 (union alleged that it represented claims investigation agents and claims investigation agent supervisors, including members of that group who were affected by the challenged removal from civil service protection); *Parents United for Better Schools, Inc.*, 646 A.2d at 692 (nonprofit corporation alleged that its members included parents of students in high schools where the challenged policy had been implemented).

The issue here is therefore whether the allegations of the Amended Complaint are sufficient to establish that Plaintiff's teacher and taxpayer members have standing. As the trial court correctly held, they are not.

Plaintiff argues that its members who are Philadelphia teachers have standing because under the 2010 CBA's union leave provision they have lower seniority than teachers who are on union leave. (Amended Complaint ¶7, R.R. at 16a.) Plaintiff asserts that under state law[4] and the 2010 CBA, seniority affects layoffs and staffing decisions. In addition, the 2010 CBA gives union leave teachers the right to return to the position they held at the time they went on leave. (*Id.* Ex. A, R.R. at 49a.) We agree that teachers' seniority is a substantial interest, different from the interest of the public at large in enforcing compliance with the

---

[4] Plaintiff cites to Section 1125.1 of the Public School Code, Act of March 10, 1949, P.L. 30, § 1125.1, added by the Act of November 20, 1979, P.L. 465, *as amended*, 24 P.S. § 11-1125.1, as requiring that teacher layoffs be determined by seniority. It is unclear, however, that this requirement applies to the School District, as Section 696(i)(7) of the Public School Code grants the SRC the power to "suspend professional employes without regard to the provisions of section 1125.1." Act of March 10, 1949, P.L. 30, § 696(i)(7), added by the Act of April 27, 1998, P.L. 270, *as amended*, 24 P.S. § 6–696(i)(7).

10

law that could support standing if that interest were directly and immediately affected by the 2010 CBA union leave provision.

What is absent from the Amended Complaint, however, is any factual allegation sufficient to show that this lower seniority has any direct and non-speculative, immediate effect on Plaintiff's teacher members. The Amended Complaint does not allege the number of years of seniority that Plaintiff's teacher members hold or that any of them are sufficiently low in seniority as to be subject to any risk of layoff or involuntary transfer. Given the Amended Complaint's allegations that "many" of the teachers on union leave have been on union leave for over 15 years, the allegation that Plaintiff's teacher members have less seniority than "many" of the teachers on union leave establishes only that they have less than 15 years of seniority. Moreover, even if years of seniority were alleged and Plaintiff's teacher members presently have low seniority, that would not show a likelihood that a union leave teacher would return while any individual teacher had insufficient seniority to avoid layoff or involuntary transfer because the Amended Complaint alleges that teachers stay on union leave for lengthy periods. The mere possibility that future events might occur that could cause one of Plaintiff's teacher members to be affected by union leave teachers' seniority is not sufficient to establish the direct and immediate interest required for standing. *National Rifle Association*, 999 A.2d at 1259 (possibility that an association member's gun might be stolen in the future was insufficient to constitute direct and immediate harm from ordinance requiring reporting of stolen firearms). In addition, without any allegation as to the subjects for which Plaintiff's teacher members are certificated and that they are certificated for the same subjects or positions as teachers on union leave, it cannot be concluded that teachers on union leave would be favored over any of Plaintiff's teacher members in filling positions. Because the Amended

11

Complaint does not allege the schools at which Plaintiff's members teach or the positions that they hold or that they are the same schools or positions as teachers who went on union leave, there is no basis to conclude that a union leave teacher would be favored in staff reductions within a school over any of Plaintiff's members or that a union leave teacher would be entitled to take the job of any of Plaintiff's members upon returning from leave.

Plaintiff's allegation that union leave "deprives Philadelphia teachers of assistance, leadership, and valuable service from those teachers performing union work on school time" (Amended Complaint ¶7, R.R. at 16a) is likewise insufficient to show that any of Plaintiff's teacher members are aggrieved. Union leave would only affect the School District's ability to adequately staff its schools if the Union does not fully reimburse the School District for union leave teachers' salaries and benefits and Plaintiff admits that it does not allege that the School District bears any cost of the union leave. The absence of particular teachers would not affect any schools other than the schools to which they are assigned, and Plaintiff does not allege that its members teach in any of the schools where the union leave teachers would be if they were not on leave or returned to their prior positions.

Plaintiff also argues that its members who are Philadelphia taxpayers have standing because their taxes fund School District schools. Taxpayer standing is allowed as a limited exception to the ordinary requirement of a substantial, direct and immediate interest where the parties directly and immediately affected by the government action in question are beneficially rather than adversely affected. *Fumo*, 972 A.2d at 503-06; *Stilp v. Commonwealth*, 940 A.2d 1227, 1233-35 (Pa. 2007); *Pittsburgh Palisades Park, LLC*, 888 A.2d at 661-62. Five requirements must be satisfied for taxpayer standing: (1) the government action that the plaintiff

12

challenges would otherwise go unchallenged; (2) those directly and immediately affected are beneficially affected and not inclined to challenge the action; (3) judicial relief is appropriate; (4) redress through other channels is unavailable; and (5) there are no other persons better situated to assert the claim. *Fumo*, 972 A.2d at 504; *Stilp*, 940 A.2d at 1233; *Pittsburgh Palisades Park, LLC*, 888 A.2d at 662. Where another party is better situated to assert the challenge that the plaintiff seeks to raise, the mere fact that it has not chosen to do so is not sufficient to support taxpayer standing. *Fumo*, 972 A.2d at 506 ("the fact that more appropriate governmental parties have not elected to challenge a particular governmental decision cannot be enough on its own to generate taxpayer standing - particularly where those executive authorities are not 'beneficially affected' by the decision"); *Stilp*, 940 A.2d at 1234-35 (because Auditor General was better situated than taxpayer to seek declaratory judgment that he had additional audit power, requirements for taxpayer standing were not satisfied even though Auditor General in his discretion had not chosen to bring suit).

Plaintiff cannot satisfy the requirements for taxpayer standing. Plaintiff admits that the School District is directly and immediately affected by the union leave provision of the 2010 CBA and could assert the claims that Plaintiff seeks to assert, but contends that because the School District is a party to the 2010 CBA, it is not inclined to challenge it. (Amended Complaint ¶8, R.R. at 16a; Appellant's Reply Br. at 6.) The Amended Complaint's allegations contradict Plaintiff's claim that the School District has no inclination to challenge the 2010 CBA. The School District agreed to the terms of the 2010 CBA for the period from September 1, 2009 to August 31, 2013, but has not agreed to extend the 2010 CBA beyond August 31, 2013 and the 2010 CBA expired on August 31, 2013. (*Id.* ¶¶14-16, R.R. at 17a-18a.) Although the 2010 CBA remains in effect and

13

Plaintiff's challenge is therefore not moot, that is because no successor agreement has been reached, not because the School District continues to agree to the terms of the 2010 CBA. (*Id.* ¶16, R.R. at 18a.) Moreover, it is clear that the School District is willing to challenge the 2010 CBA. As Plaintiff admits, the School District sought to cancel the 2010 CBA and filed a declaratory judgment action in 2014 seeking a ruling that it was not bound by the 2010 CBA. (*Id.* ¶17, R.R. at 18a.) *See Philadelphia Federation of Teachers, AFT, Local 3, AFL-CIO*, 144 A.3d at 1283-84. While the School District's attempt to cancel the 2010 CBA was enjoined on the ground that the SRC lacked the unilateral cancelation power that it asserted, *Philadelphia Federation of Teachers, AFT, Local 3, AFL-CIO*, 144 A.3d at 1293-94, that ruling has no effect on the School District's ability to challenge provisions of the 2010 CBA as illegal if it believed that there is a valid basis for such a challenge.

Nor is the School District the only directly and immediately affected party better situated than taxpayers to challenge the union leave provision. To the extent that Plaintiff contends that the union leave provision inflates pension costs, the Public School Employees' Retirement System has the power to challenge inflated pension claims and has in fact successfully made such a challenge. *See Kirsch*, 985 A.2d at 673, 675-78. A School District teacher who loses his or her position to a teacher who returns from union leave or is laid off as a result of another teacher's union leave seniority would be directly and adversely affected by the union leave provision and could have standing to challenge the 2010 CBA's union leave provision.

In addition, even where the five requirements for taxpayer standing are satisfied, the plaintiff must allege some adverse effect of the challenged action on taxpayers as a whole. *Upper Bucks County Vocational-Technical School*

14

*Education Association v. Upper Bucks County Vocational-Technical School Joint Committee*, 474 A.2d 1120, 1122 (Pa. 1984) (no taxpayer standing to challenge reduction in number of school days because there was no allegation that reduction in state subsidy would cause any tax increase to offset the lost state funding). Union leave would only affect the School District's finances and Plaintiff's members' taxes if the Union does not fully reimburse the School District for union leave teachers' salaries and benefits. Because Plaintiff does not allege that the Union does not fully reimburse the School District, there is no adverse effect on taxpayers and its members' status as Philadelphia taxpayers cannot give them standing to challenge the union leave provision.

Because the trial court correctly concluded that Plaintiff failed to show that any of its members have standing, we affirm its dismissal of Plaintiff's action.

_____
JAMES GARDNER COLINS, Senior Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Americans for Fair Treatment, Inc.,    :
   :
         Appellant   :
   :
         v.   : No. 1618 C.D. 2015
   :
Philadelphia Federation of Teachers,   :
Local 3, AFL-CIO; The School    :
District of Philadelphia; and School   :
Reform Commission   :

# **O R D E R**

AND NOW, this 21st day of November, 2016, the July 22, 2015 orders of the Court of Common Pleas of Philadelphia County in the above captioned matter are AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge