Brian J. O'Grady and Angeline O'Grady, Parents of Steven O'Grady, a minor, Petitioners v. Centennial School District, Respondent.
Commonwealth of Pennsylvania, Department of Education, Party Respondent.

Argued April 6, 1979, before Judges CRUMLISH, JR., ROGERS and CRAIG, sitting as a panel of three.

*Robert W. Suter,* with him *Suter and O'Connor,* for petitioners.

*Ernest N. Helling,* Assistant Attorney General, with him *Patricia A. Donovan,* Deputy Attorney General, Chief Counsel, for respondents.

OPINION BY JUDGE ROGERS, June 7, 1979:

This is an appeal from an order of the Secretary of Education (Secretary) dismissing the appeal of Centennial School District and vacating a report issued by a hearing officer following a due process hearing conducted pursuant to Department Regulations found at 22 Pa. Code §§13.31 to 13.33.

Steven Richard O'Grady, who was born on May 8, 1965, is an exceptional child within the meaning of Section 1371 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1371. Steven had attended two special education programs provided by the Centennial School District during school years from 1973 until September 1977 when he was hospitalized because of severe stress. During the hospitalization the School District recommended that upon Steven's release he be placed in an approved private school with a program for learning disabled children and specifically stated that the Pathway and Wood Schools were being considered. In the notice of recommended educational assignment the School District claimed limitation of its financial responsibility to the educational component of any residential program. Steven's parents did not approve the School District's educational assignment and on October 28, 1977 requested a due process hearing. The School District also requested a hearing by letter dated Novem-

ber 7, 1977. After Steven's release from the hospital, the School District made a revised recommended assignment on December 27, 1977 to Wordsworth Academy-Linfield program, a day program, but his parents rejected the program because it was not a residential placement.

A hearing Officer's report issued after hearing recommended that Steven be placed in a free public program of education and training, including a residential component, in an approved private school and the development of an Individualized Education Plan by the School District working in conjunction with the approved private school. The School District filed exceptions to the report and the Secretary, by interlocutory order dated April 26, 1978, remanded the matter to the hearing officer to make further findings of fact supporting his recommendation.

On June 29, 1978, however, the Secretary issued a final order from which the present appeal was taken, dismissing the School District's appeal from the decision of the hearing officer and vacating the remanded decision. The Secretary based her decision on an order of the Court of Common Pleas of Bucks County sitting as a Juvenile Court, dated March 21, 1978, committing Steven into the custody of the Pathway School. The court's order was made in response to Mr. and Mrs. O'Grady's petition to have Steven declared a deprived[1] child and placed in the residential treatment facility of the Pathway School. The Secretary reasoned that the Court's order relieved the parents of responsibility for

---

[1] The placement was made pursuant to the Juvenile Act, Act of December 6, 1972, P.L. 1464, as amended, by the Act of August 3, 1977, P. 155. The Act is now codified at 42 Pa. C.S. §§6301-63. By the 1977 amendment, the term deprived child was changed to dependent child and the later term should have been used in the Juvenile Court proceedings in this case. Our citations to the Juvenile Act in the opinion will be to the sections of the Consolidated Statutes.

Steven's education by transferring legal custody of Steven from his parents to the Pathway School. The Secretary concluded that Steven's parents no longer had standing to contest the School District's recommended educational placement for their son and that the issues on appeal were moot.

The opinion of the Secretary uses the concepts of standing and mootness interchangeably and in doing so confuses the two. The issue of standing seeks an answer to the question: is the complainant a person who has an interest in the subject of the litigation which the law says is sufficient to qualify him as a suitor? Clearly, the parents of a fourteen year old child have sufficient interest and therefore standing to litigate the subject of the proper discharge by his School District of its statutory duty to provide him with education despite the fact that the child is temporarily, and as the parents asserts because of the delay occasioned by this litigation, committed to the custody of an institution. Moreover, the Department's regulations expressly confer upon the parents of any school-aged child the right to invoke due process procedures, 22 Pa. Code §13.31(b), including an appeal to the Secretary, 22 Pa. Code §§13.33(7), 13.32(24). The standing of Steven's parents was conferred by the Department's own regulations.

Further, the O'Gradys were not appellants but appellees in the appeal to the Secretary. The due process hearing was requested by both the School District and Steven's parents and the report of the hearing officer recommended the educational program desired by the parents.

Steven was adjudicated a dependent child on March 21, 1978. A dependent child is defined in the Juvenile Act at 42 Pa. C.S. §6302 as one who "(1) is without proper parental care or control, subsistence, education

as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. . . .'' The proceedings were commenced by a petition of Steven's parents, in which they alleged the child was beyond the reasonable limits of control in his home setting and that the physical, mental, emotional and educational needs of the child could best be served by placement in the residential treatment facility at the Pathway School. The court granted the prayer of the petition pursuant to 42 Pa. C.S. §6351(a)(2)(ii), relating to the disposition of a dependent child. That section states:

> (2) Subject to conditions and limitations as the court prescribes [the court may] transfer *temporary* legal custody to any of the following:
>
> . . . .
>
> (ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child. (Emphasis added.)

The Department of Education's assertion of mootness is based upon the Juvenile Act's statement of the rights and duties of a legal custodian:

> A custodian to whom legal custody has been given by the court under this chapter has the right to the physical custody of the child, the right to determine the nature of the care or treatment of the child, including ordinary medical care and the right and duty to provide for the care, protection, training, and education, and the physical, mental, and moral welfare of the child, subject to the conditions and limitations of the order and to *the remaining rights and duties of the parents or guardian of the child.* (Emphasis added.)

42 Pa. C.S. §6357.

We do not agree that the court's order rendered the controversy pending before the Secretary over the correct educational placement for Steven moot.

The Juvenile Court's authority was expressly limited to granting temporary legal custody. The parents' resort to the Juvenile Act was therefore an effort to obtain temporary placement for their son while they and the school authorities were deciding by litigation what the proper program for his education should be. The delay in the administrative proceedings resulted in a denial of education defined in the Juvenile Act as an occasion for declaring him a dependent child. 42 Pa. C.S. §6302. The parents' desire to have a final decision concerning their child's educational assignment by the School District was entirely consistent with their petition to have their son declared a dependent child.

Furthermore, the rights and duties granted to a legal custodian under 42 Pa. C.S. §6357, quoted above, are subject to the remaining rights and duties of the parents, one of which is financial liability for the child's care. Under 42 Pa. C.S. §6306, the costs and expenses for the care of the child are allocated according to Sections 704.1 and 704.2 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Act of July 9, 1976, P.L. 846, *as amended,* 62 P.S. §§704.1, 704.2. Subsection (e) of Section 704.1 authorizes the court, after notice and an opportunity to be heard, to order the parents or other persons with a legal obligation of care and support to pay all enumerated costs and expenses of care if they are financially able to do so. In contrast, Department of Education Regulations entitle all handicapped school-age persons to an appropriate program of education or training, and the services of approved private schools, such as Pathway, may be used when intermediate units and

school districts agree that they cannot otherwise provide effective and efficient services for handicapped students. 22 Pa. Code §13.11(a)(b). Section 1376 of the Public School Code of 1949, 24 P.S. §13-1376, requires the school district in which the exceptional child resides to pay 25% and the Commonwealth 75% of the cost of tuition and maintenance, as determined by the Department and within stated limits, of the child placed in an approved institution. Subsection (d) of Section 1376 prohibits the imposition of any charge on a parent or student by an approved private institution receiving payment in accordance with the section, except charges for programs not part of the normal school year. Steven's parents as well as Centennial School District have a financial interest in whether the recommendations of the hearing officer will be implemented.

The Secrtary erred in dismissing the appeal and vacating the report of the hearing officer and the Secretary's order of June 29, 1978 must be reversed and the record remanded so that the Secretary may review the report of the hearing officer made after the Secretary's remand for findings and make a final order accepting or rejecting those recommendations.

Since we reverse the Secretary's order, we need not consider the parents' remaining arguments. We reject the argument of Centennial School District that it is no longer responsible for Steven's education because the Pathway School, his custodian, is not located in the School District. Section 1302 of the Public School Code, 24 P.S. §13-1302, provides:

> A child shall be considered a resident of the school district in which his parents or the guardian of his person resides. . . .

A custodian of a dependent child by appointment under the Juvenile Act is by definition a person other than a legal guardian. 42 Pa. C.S. §6302.

## ORDER

AND Now, this 7th day of June, 1979, the order of the Secretary of Education, dated June 29, 1978, is reversed and the record is remanded to the Secretary of Education for proceedings consistent with this opinion.

L. & G., Inc., The Lorelei, 263 South 15th Street, Philadelphia, Pennsylvania *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board. L. & G., Inc. (The Lorelei), Appellant.