# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Open PA Schools, Jamie Walker,   :
Tara Adams, James Holt, Felix P.   :
Mummolo, Stacey McShane, Jaret   :
Matthew Gale, Patrice Silver, Joe   :
Dettore, Sr., Chris Brill, and Beth   :
Rosica,   :
           Petitioners   :
  :
         v.   :
  :
Department of Education of the   :
Commonwealth of Pennsylvania   :
and Noe Ortega, Secretary of   :
Education, in his official capacity,   :   No. 504 M.D. 2020
           Respondents   :   Argued: February 9, 2022

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORANLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: May 12, 2022

       This matter concerns an Amended Petition for Review (Amended Petition) brought pursuant to the Declaratory Judgments Act[1] by Petitioners, who are Open PA Schools, "an unincorporated association consisting of over one hundred

---

[1] 42 Pa.C.S. §§ 7531-7541.

parents of children attending public schools throughout the Commonwealth," and 10 individual parents.[2] Amended Petition at 4-5. Respondents are the Department of Education of the Commonwealth of Pennsylvania and its Secretary, Noe Ortega, in his official capacity (together, the Department). *Id*. at 6. Petitioners oppose the Department's policy (Policy) providing guidance and procedures to school districts that began the 2020-21 school year on a largely or entirely remote learning basis in light of the COVID-19 pandemic. *Id*. at 9. Petitioners assert that the Policy violates Section 1501 of the Public School Code of 1949[3] (School Code), which requires that all public kindergarten, elementary, and secondary schools "shall be kept open each school year for at least one hundred eighty (180) days of instruction for pupils." *Id*. at 6-9 & 13 (citing 24 P.S. § 15-1501).

Currently before this Court for disposition are various preliminary objections filed by the Department. Upon review, we sustain the Department's preliminary objection challenging Petitioners' standing and dismiss the Amended Petition with prejudice. We do not reach or address the merits of Petitioners' allegations that the Department's Policy violates the School Code and is the proximate cause of permanent educational and psychological damage to every child in the Commonwealth. *See* Amended Petition at 15.

## I. Factual and Procedural Background

On March 27, 2020, at the onset of the COVID-19 pandemic, the General Assembly enacted Section 1501.8(b)(1) of the School Code, effective

---

[2] The individual parents are Jamie Walker, Tara Adams, James Holt, Felix P. Mummolo, Stacey McShane, Jaret Matthew Gale, Patrice Silver, Joe Dettore, Sr., Chris Brill, and Beth Rosica.

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101–27-2702.

immediately, which stated, in pertinent part: "The requirement under [S]ection 1501 requiring all school entities to be kept open each school year for at least one hundred eighty (180) instructional days is waived immediately."  24 P.S. § 15-1501.8(b)(1).[4] Section 1501.8, which expressly applied only to the 2019-20 school year, also authorized the Department to close school buildings and "[i]ncrease the number of flexible instructional days that school entities may institute under [Section 1506 of the School Code, 24 P.S. § 15-1506,[5]] to a number of flexible instructional days

---

[4] Section 1501.8 was added by Section 4 of the Act of March 27, 2020, P.L. 62.

[5] Section 1506 was added by Section 1 of the Act of July 2, 2019, P.L. 396.  It became effective on September 3, 2019, and includes the following definitions in subsection (h)(2):

> "Flexible instructional day" shall mean a day that satisfies all of the following:
>
> (1) Fulfills one of the minimum required days of instruction under section 1501.
>
> (2) Prevents a school building from opening due to any of the following:
>
>> (i) A disease epidemic.
>>
>> (ii) A hazardous weather condition.
>>
>> (iii) A law enforcement emergency.
>>
>> (iv) The inoperability of school buses or other equipment necessary to the public school entity's operation.
>>
>> (v) Damage to a school building.
>>
>> (vi) Another temporary circumstance rendering any portion of a school building unfit or unsafe for use.
>
> (3) Provides instruction to students.
>
> "Program" shall mean a program that allows for a number of flexible instructional days not to exceed five (5) days during a school year.

24 P.S. § 15-1506(h)(2).

3

determined by the Secretary of Education during the 2019-20 school year." 24 P.S. § 15-1501.8(a) & (b)(2)(i)-(ii).

The General Assembly did not renew Section 1501.8 for the 2020-21 school year. On June 5, 2020, it added Section 1501.9 to the School Code, which provided: "Beginning in the 2020-[21] school year, the minimum number of school days under [S]ection 1501 shall apply notwithstanding any order issued under a declaration of disaster emergency under 35 Pa.C.S. § 7301(c) (relating to general authority of Governor)." 24 P.S. § 15-1501.9.[6] Thus, the minimum requirement of 180 school days was not waived for the 2020-21 school year and the remaining permissive provisions of Section 1501.8 were not continued.

During the summer of 2020, the Department issued the Policy, which is available on its website. *See* Policy.[7] The Department recognized that schools faced challenges in planning for the start of the 2020-21 school year and cited Section 520.1 of the School Code ("Temporary emergency provisions"), which states:

> (a) Whenever an emergency shall arise which the board of school directors of any school district in the performance of its duties could not anticipate or foresee, and which emergency shall result in any such school district being unable to provide for the attendance of all pupils during the prescribed length of school days, number of days per week, or usual hours of classes, . . . such board of school directors, subject to the approval of the [Department], shall have power to put into operation in such school

---

[6] Section 1501.9 was added by Section 10 of the Act of June 5, 2021, P.L. 223.

[7] *See* https://www.education.pa.gov/Schools/safeschools/emergencyplanning/COVID-19/SchoolReopeningGuidance/ReopeningPreKto12/Pages/InstructionalHours.aspx (last visited May 11, 2022). The Department updated this portion of its website for the 2021-22 school year, but has provided the Court with a paper copy of the version at issue in this litigation. Department's Preliminary Objections, Exhibit A.

4

district any one or more of the temporary provisions hereinafter provided for, but in no event shall such temporary provisions remain in effect for a period of more than four years after they are first put into effect.

(b) Subject to the foregoing provisions, any board of school directors may:

(1) Keep the schools of the district in session such days and number of days per week as they shall deem necessary or desirable, but the provisions of this act requiring a minimum of one hundred eighty (180) session days as a school year shall not be affected thereby.

(2) Reduce the length of time of daily instruction for various courses and classes.

24 P.S. § 5-520.1(a), (b).[8] In the Policy the Department stated that the COVID-19 pandemic constituted "an emergency as contemplated by [S]ection 520.1" and authorized school districts across the Commonwealth to offer remote learning in excess of five days during the 2020-21 school year. *See* Policy.

Petitioners initiated this litigation when they filed a previous version of the Amended Petition (Original Petition) on September 8, 2020, against the Department and seven school districts where Petitioners' children attended school. Original Petition at 6. Petitioners asserted that the Policy violated the School Code's requirement that school districts provide at least 180 in-person school days in the 2020-21 school year, that the Policy should be declared void, and that any remote learning days during the 2020-21 school year beyond the 5 permitted by Section 1506 should not be counted towards the 180-day requirement. Original Petition ¶¶ 31-32 & Prayer for Relief.

---

[8] Section 520.1 was added by Section 1 of the Act of January 14, 1952, P.L. (1951) 1940.

5

The Department and school districts filed preliminary objections to the Original Petition asserting lack of standing, failure to exhaust administrative remedies, lack of subject matter jurisdiction, failure to join necessary and indispensable parties, and legal insufficiency. After *en banc* oral argument on December 9, 2020, this Court issued a memorandum opinion concluding that the Original Petition, as drafted, failed to establish standing. *Open PA Schools v. Dep't of Educ.* (Pa. Cmwlth., No. 504 M.D. 2020, filed Jan. 14, 2021), 2021 WL 129666 (unreported). We dismissed the Original Petition without prejudice and permitted Petitioners to file an amended petition within 30 days. *Id.*, slip op. at 15-16, 2021 WL 129666, at *7.

On February 13, 2021, Petitioners filed the present Amended Petition naming only the Department as Respondent but not the previously named school districts.[9] The Amended Petition renews Petitioners' assertion that the Policy violates the School Code and the Pennsylvania Constitution.[10] Amended Petition at 15-16. The Department filed new preliminary objections asserting lack of standing, lack of redressability, improper relief sought, and failure to state a claim, which Petitioners answered. Briefing and oral argument has concluded, and this matter is now ripe for disposition.[11]

---

[9] Petitioners state in their brief without further explanation that the school districts "are no longer parties to this litigation." Petitioners' Br. at 4.

[10] Petitioners refer to article III, section 14 of the Pennsylvania Constitution, which imposes a duty on the legislature to "provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. III, § 14. Amended Petition ¶¶ 8-10.

[11] In ruling on preliminary objections, this Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom. *Dorfman v. Pa. Soc. Servs. Union-Loc. 668 of Serv. Emps. Int'l Union*, 752 A.2d 933, 936 (Pa. Cmwlth. 2000). "However, we need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or

## II. Discussion

The Department again challenges Petitioners' standing to bring this action, alleging failure to assert sufficient harm caused by the Policy. Preliminary Objections ¶¶ 12-18. Our law on standing is well settled:

> [T]he discrete principles of standing, ripeness, mootness, the political question doctrine, and the proscription against issuing advisory opinions are prudential, judicially created principles designed to winnow out litigants who have no direct interest in a judicial matter and have not presented to the court a true case and controversy for which judicial relief is appropriate.

*Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1137 (Pa. Cmwlth. 2017).

In *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975) (plurality),[12] our Supreme Court held that "one who seeks to challenge governmental action must show a direct and substantial interest. . . . In addition, he must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as immediate rather than remote." *Id.* at 286 (internal quotation marks and footnotes omitted). In this regard, "the concern is to distinguish those who have suffered some individual injury from

---

expressions of opinion." *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

[12] *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975), is a plurality opinion concerning whether a pecuniary interest is required to assert standing in the context of a taxpayer challenge. *See id.* at 295-96 (Eagen, J., concurring, with Jones, C.J. & Pomeroy, J.; Nix, J., concurring in result). Nevertheless, its presentation of the principles of standing has been widely cited in cases not concerning or limited to taxpayer standing. *See, e.g.*, *Johnson v. Am. Standard*, 8 A.3d 318 (Pa. 2010) (holding that estate executors had standing to challenge constitutionality of statute limiting successor liability for asbestos-related injuries and deaths).

7

those asserting only the common right of the entire public that the law be obeyed." *Id*. at 287. Along these lines, a potential petitioner may be "affected" by a governmental action, but if he fails to establish the requisite substantial, direct, and immediate interest to support standing, the action may be dismissed. *McConville v. City of Phila.*, 80 A.3d 836, 843 (Pa. Cmwlth. 2013).

Standing is a threshold matter and "unless one has a legally sufficient interest in a matter, that is, is aggrieved, the courts cannot be assured that there is a legitimate controversy." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659-60 (Pa. 2005) (internal cites & quotation marks omitted). "[T]he person must be negatively impacted in some real and direct fashion[.]" *Id*. at 660 (internal quotation marks and citation omitted). The interest must also be "peculiar," "personal," "individualized," and "greater than that of any other citizen." *Id*. However, when petitioners allege that government action violates a statute, we have not required them to assert that only they are affected, so long as they allege that the challenged action creates a "discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Nat'l Election Def. Coal. v. Boockvar*, 266 A.3d 76, 101 (Pa. Cmwlth. 2021). Put simply, a petitioner must allege sufficient facts to establish that an "injury in fact" has been sustained. *Johnson v. Am. Standard*, 8 A.3d 318, 330 (Pa. 2010) (citing *William Penn Parking Garage*, 346 A.2d at 283-84 & n.23).

In the context of school and education litigation, parents seeking to sue on behalf of their children generally have a direct and substantial interest, which is part of the standing inquiry set forth in *William Penn Parking Garage*. In *O'Grady v. Centennial School District*, 401 A.2d 1388, 1390 (Pa. Cmwlth. 1979), this Court found parental standing even though the child was not currently in the parents'

8

custody. In *Parents United for Better Schools, Inc. v. School District of Philadelphia Board of Education*, 646 A.2d 689 (Pa. Cmwlth. 1994), we concluded that individual parents and a parents' group established a substantial interest to challenge a school board policy regarding distribution of condoms in schools even though the interest they articulated was "shared by all parents of Philadelphia schoolchildren," because "[t]o deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *Id*. at 692 (quoting *U.S. v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688 (1973)).[13]

However, petitioners seeking parental standing must still satisfy the applicable requirements, and preliminary objections may be sustained for lack of standing where the petition "does not allege expressly or by necessary implication that [the petitioner] is directly, immediately, or substantially affected by [the challenged provision]." *Pa. Chiropractic Fed'n v. Foster*, 583 A.2d 844, 851 (Pa. Cmwlth. 1990). If a petition contains only "general averments" or allegations that "lack the necessary factual depth to support a conclusion that the [petitioner] is an aggrieved party," standing will not be found. *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 417 (Pa. Cmwlth. 2006),

---

[13] In *Reichley v. North Penn School District*, 537 A.2d 391 (Pa. Cmwlth. 1988), parents sought an injunction to compel striking teachers to return to work. We concluded that "parents have an interest in seeing that the children receive an education including the 'perks' attendant to it such as sports, band, and various other extra-curricular activities. This then gives these Petitioners a greater interest than that of the public at large." *Id*. at 393.

The dissent incorrectly states that *Reichley* is dispositive of the standing question in this case. *Open PA Schools v. Dep't of Educ.* (Pa. Cmwlth., No. 504 M.D. 2020, filed May 12, 2022), slip op. at 2-4 (McCullough, J., dissenting). However, the issue here, unlike in *Reichley*, is whether Petitioners alleged facts sufficient to establish an injury in fact, which is an additional requirement of standing under the test set forth in *William Penn Parking Garage*. See 346 A.2d at 283-84 & n.23.

*aff'd per curiam*, 924 A.2d 1203 (Pa. 2007). Moreover, the harm asserted must be specific, actual, and discernible (an "injury in fact"); an assertion of abstract or unspecified harm without factual averments connecting the alleged harm to the actions being challenged does not give rise to standing to bring a lawsuit. *Id.*

The Department argues that Petitioners have failed to allege any specific instances of damage or loss resulting from the Policy. Department's Br. at 8-9. Petitioners respond that the Amended Petition alleges psychological losses and educational delays suffered by Pennsylvania children when school districts resorted to continued remote instruction during the 2020-21 school year as permitted by the Policy. Petitioners' Br. at 4-6. Petitioners add that their own interests are sufficient to confer standing because they are the parents of children deprived of the benefits of in-person instruction. *Id.*

The following portions of the Amended Petition, none of which were in the Original Petition, are at issue:

> 6. The individual petitioners are parents of children who are directly and immediately impacted by the [Department's] policy that permits school districts to use virtual learning as a substitute for in person (face-to-face) instruction and, therefore, their children are deprived of the benefit of 180 days of in person instruction that is required by Section 1501 of the [School Code].
>
> . . . .
>
> 33. Although the overwhelming majority of parents in the Commonwealth are in favor of some form [of] in person learning, yet many school districts in the Commonwealth, following the [Policy,] have denied parent's [sic] the right to an in person education.
>
> . . . .

10

37. [The Policy] not only violates the School Code, but it denies students critical non-education programs.[14]

38. The [Department] is not only trampling on the rights of parents, but it is also usurping the exclusive authority of the General Assembly as to how an efficient system of education can be maintained.

. . . .

43. Petitioners interests surpass those of other citizens because they are [parents] of children impacted by the [Policy] and have been robbed of their entitlement of at least 180 days of in-person instruction for their children that is required by the School Code.

44. The [Department is] causing every child in the Commonwealth permanent and irreparable harm.

45. The [Department is] causing every child in the Commonwealth permanent psychological damage from the lack of daily social interaction.

46. The [Department is] causing every child in the Commonwealth permanent educational damage because it will take years for student[s] to catch up after losing so much classroom time because of the [Department's Policy].

Amended Petition ¶¶ 6, 33, 37-38 & 43-46.[15]

---

[14] Petitioners point out that many children also depend on schools for in-person health, social, and meal services. Amended Petition ¶ 35.

[15] The numbering of paragraphs in the Amended Petition mistakenly repeats Paragraphs 31-39 on pages 14-15. For purposes of this decision, we have correctly renumbered them as 41-49.

First, it is unclear from the Amended Petition whether Petitioners are suing in their own right, on behalf of their children, or both. This imprecision contributes to Petitioners' failure to establish standing in this case.[16] The individual Petitioners appear in the Amended Petition's recitation of parties as parents but not on behalf of their minor children, which suggests they are suing in their own right. Amended Petition ¶¶ 4-6. Likewise, Petitioners aver that the school districts' actions in following the Policy "have denied parent's [sic] the right to an in-person education" and that the Department's action in issuing the Policy "trampl[es] on the rights of parents." *Id.* ¶¶ 33 & 38. Petitioners also maintain that their interests surpass those of other citizens in Pennsylvania "because they are [the parents] of children impacted by the official policy and [who] have been robbed of their entitlement of at least 180 days of in-person instruction for their children that is required by the School Code." *Id.* ¶ 43.

However, Petitioners also assert that their children were "deprived of the benefit of 180 days of in[-]person instruction" by uncapped remote instruction during the 2020-21 school year and that the Policy is "causing every child in the Commonwealth permanent and irreparable harm," which suggests Petitioners are suing on their children's behalf, although the Amended Petition does not list Petitioners' children as parties to this litigation, even through their parents. *Id.* ¶¶ 5-6 & 44. The Amended Petition further alleges psychological and social impacts and educational delays sustained by all of Pennsylvania's school children who attended

---

[16] When questioned at oral argument, counsel for Petitioners stated that both Petitioners as parents and their children sustained harm from the Policy's operation.

school remotely because the Policy permitted school districts to continue largely remote learning during the 2020-21 school year. Amended Petition ¶¶ 45-46.[17]

Petitioners therefore assert in the Amended Petition that in-person education is not just a right of their children, but of themselves as parents. Amended Petition ¶¶ 33 & 43. However, the right of either parents or children to in-person education has not been declared in the Commonwealth, and while Petitioners seek here to have that right recognized, we decline to do so solely for the purposes of establishing Petitioners' standing where, as we discuss below, they have not asserted sufficient and specific facts to support their assertions of harm.

In *O'Grady*, parents challenged the school district's failure to place their child in a residential special education setting. 401 A.2d at 1390. Unlike this case, *O'Grady* involved a purely individual and far more developed set of facts, and the question was not the basis of standing, but whether the parents could assert standing without having custody of the child. Moreover, it cannot be inferred from a reading of *O'Grady* that the parents there were claiming they personally had a right to their child's placement in a residential education setting. Thus, *O'Grady* is inapposite to the situation here, where the right asserted by Petitioners, in-person schooling for their children, is not settled and they are claiming that right individually as parents rather than solely on behalf of their children.

In addition to a lack of specificity in the Amended Petition as to whose interests are being claimed, Petitioners have again failed to allege any "peculiar," "personal," and "individualized" harm to themselves or to their children's education

---

[17] As noted, Petitioners also allege that the lack of in-person schooling negatively impacts children who depend on schools to provide meals and other social, physical, medical, and mental health services of a non-educational nature. Amended Petition ¶¶ 35-37. Petitioners do not, however, assert in the Amended Petition that this is the case for their children.

13

and wellbeing resulting from the Policy. *See Pittsburgh Palisades Park*, 888 A.2d at 659-60. Their assertions still lack the "necessary factual depth" required to allege an "injury in fact" by connecting the Policy's permission for school districts to offer extended remote schooling during the 2020-21 school year with specific instances of harm actually sustained by Petitioners or their children.

In *Funk v. Wolf*, 144 A.3d 228 (Pa. Cmwlth. 2016), the petitioners alleged that government inaction on climate change violated the Environmental Rights Amendment in article I, section 27 of the Pennsylvania Constitution, Pa. Const. art. I, § 27. *Id*. at 232; . The government raised a standing challenge, arguing that the petitioners, who were minors suing through their parents and guardians, asserted only generalized harms. *Id.* at 243. We disagreed, finding sufficient detail in the petitioners' averments that they personally and specifically had already sustained negative impacts from unchecked climate change. *Id*. at 246-48. Specifically, the petition gave numerous concrete examples of how climate change had already affected each petitioner as an individual, including diminished enjoyment of outdoor experiences and activities; contending with tornadoes, hurricanes, floods, temperature swings, and other increasingly dramatic weather events; worsening and aggravation of asthma and other health conditions; and decreased access to coastal recreation areas affected by rising sea levels and ocean acidification. *See id.* at 246-48

Here, unlike in *Funk*, Petitioners' allegations lack any specific factual connection to themselves or their children and are merely generic assertions of educational and psychological harms potentially sustained by all public schoolchildren subject to uncapped remote learning during the 2020-21 school year. Also, while Petitioners' decision to limit their allegations to the Department's

14

actions in setting the Policy avoids the logistical issue of re-joining their school districts to this litigation, the Policy is permissive rather than mandatory, which weakens Petitioners' ability to claim they have met the "direct" and "immediate" requirements of standing vis-à-vis the Department's actions.[18]

In *Lisa H. v. State Board of Education*, 447 A.2d 669 (Pa. Cmwlth. 1982), two schoolchildren sued through their parents, asserting that regulations governing the selection of children for gifted programs violated their rights by excluding them from better and more well-funded public programs without just cause. *Id.* at 672. We found that while the petitioners "assert[ed] that they were not deemed to qualify for admission to the program under the current criteria, they [did] not allege in their amended complaint that they are gifted and talented school-aged children who are eligible for the program." *Id.* at 674. We therefore concluded that they "failed to establish themselves as parties aggrieved by the criteria set forth in the [School] Code and have failed to demonstrate the direct, immediate and substantial interest necessary to confer standing upon them in this action." *Id.*

Here, as in *Lisa H.*, Petitioners have again failed to connect the asserted harm caused by the Policy in any specific way with themselves or their children. The Amended Petition contains no allegations rooted in their actual experiences, instead emphasizing that by operation of the Policy, the Department has caused unspecified educational and psychological harm to "every child in the Commonwealth[.]" Amended Petition ¶¶ 44-46.

---

[18] The Policy provided guidance for school districts to continue providing uncapped remote learning during the 2020-21 school year but emphasized that the decision to do so remained a local matter for school districts. Had Petitioners' school districts provided in-person schooling, Petitioners would not have had a basis for their cause of action.

These allegations do not set forth a viable "injury in fact" sustained by Petitioners. Instead, the Amended Petition simply implies that because Petitioners allege that the Policy violates the School Code and all Pennsylvania schoolchildren were impacted when their districts opted for ongoing remote learning, they need not do more to establish their actual standing to bring this action. As in the previous iteration of this case, Petitioners' apparent position again conflates the level of harm needed to establish standing with the harm that must be shown to obtain a preliminary injunction, a lower standard in which mere violation of a law may be sufficient. *Open PA Schools*, slip op. at 14-15, 2021 WL 129666, at *7 (citations omitted). We explained the distinction as follows:

> In *Pennsylvania Public Utility Commission v. Israel*, 52 A.2d 317 (Pa. 1947), our Supreme Court [held] that for purposes of injunctive relief, a violation of a statute was, in itself, irreparable harm or injury. *Israel* continues to be cited for the proposition that a continuing violation of a statute is all the harm that must be shown by the moving party seeking a preliminary injunction. *See, e.g., Wolk v. Lower Merion Sch. Dist.*, 228 A.3d 595, 611 (Pa. Cmwlth. 2020) (citing *Israel* for premise that in injunction context, "[s]tatutory violations constitute irreparable harm *per se*").

> The availability of "*per se* harm" in the injunction setting appears to be asserted here by analogy in Petitioners' position that if this Court finds that the Department and the responding districts' actions in beginning the 2020-21 school year with largely or entirely remote teaching violate the School Code, then declaratory judgment in Petitioners' favor is warranted. However, the standard of harm required to achieve standing requires a would-be plaintiff to show more: a direct, substantial, immediate interest and sufficient averment of facts showing the party is aggrieved.

16

*Id.* (citations omitted).

As the authorities cited above show, parents generally have broad authority to sue on behalf of themselves or their children in the educational context, but this does not negate the basic requirements of standing, including the need to clearly allege, with factual support in the petition, a substantial, direct, and immediate interest greater than that of all Pennsylvanians. *See Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh v. Pa. Hum. Rels. Comm'n*, 682 A.2d 1345, 1347 (Pa. Cmwlth. 1996) ("It is in the interest of all citizens that the School Board comply with the law and not engage in discriminatory hiring. [The petitioners] have failed to show a discernible adverse effect to any other interest."). Petitioners have now had two opportunities to present clear and sufficient facts in support of their standing in this case and have again failed to do so. *See Open PA Schools*, slip op. at 14-15, 2021 WL 129666, at *6-7 ("[A]ssuming arguendo that Petitioners have been more directly impacted than ordinary citizens because they are parents of [schoolchildren], . . . Petitioners' assertions . . . either state no harm at all or are the kind of "general averments" found insufficient to achieve standing[.]"). We therefore sustain the Department's preliminary objection challenging Petitioners' standing. In light of our dismissal of the Petition on grounds that it fails to plead sufficient harm or injury to establish Petitioners' standing, we do not reach the Department's additional preliminary objections.

Because Petitioners have already had two opportunities to establish standing, we conclude that they are unable to allege sufficient facts by individualizing the asserted harms they currently allege in general form. Therefore, we dismiss the Amended Petition with prejudice.

17

### III. Conclusion

For the foregoing reasons, we sustain the Department's preliminary objection asserting lack of standing. Petitioners' Amended Petition is dismissed with prejudice.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Open PA Schools, Jamie Walker,     :
Tara Adams, James Holt, Felix P.     :
Mummolo, Stacey McShane, Jaret     :
Matthew Gale, Patrice Silver, Joe     :
Dettore, Sr., Chris Brill, and Beth     :
Rosica,     :
            Petitioners     :
    :
        v.     :
    :
Department of Education of the     :
Commonwealth of Pennsylvania     :
and Noe Ortega, Secretary of     :
Education, in his official capacity,     :    No. 504 M.D. 2020
            Respondents     :

## O R D E R

AND NOW, this 12th day of May, 2022, the preliminary objection filed by the Department of Education of the Commonwealth of Pennsylvania and Noe Ortega, Secretary of Education, in his official capacity, challenging the standing of Petitioners, Open PA Schools, Jamie Walker, Tara Adams, James Holt, Felix P. Mummolo, Stacey McShane, Jaret Matthew Gale, Patrice Silver, Joe Dettore, Sr., Chris Brill, and Beth Rosica, is SUSTAINED. Petitioners' Amended Petition for Review is DISMISSED with prejudice.

_____
CHRISTINE FIZZANO CANNON, Judge

Open PA Schools, Jamie Walker,   :
Tara Adams, James Holt, Felix P.   :
Mummolo, Stacey McShane, Jaret   :
Matthew Gale, Patrice Silver, Joe   :
Dettore, Sr., Chris Brill, and Beth   :
Rosica,   :
               Petitioners   :
  :
  :   No. 504 M.D. 2020
            v.   :
  :   Argued: February 9, 2022
  :
Department of Education of the   :
Commonwealth of Pennsylvania   :
and Noe Ortega, Secretary of   :
Education, in his official capacity,   :
             Respondents   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE STACY WALLACE, Judge

**_OPINION NOT REPORTED_**

DISSENTING OPINION
BY JUDGE McCULLOUGH               FILED: May 12, 2022

      Respectfully, I must disagree with the well-written Majority that the parents do not have standing. In the amended Petition for Review (PFR), Petitioners[1]

---

[1] Petitioners in this matter are Open PA Schools, Jamie Walker, Tara Adams, James Holt, Felix P. Mummolo, Stacey McShane, Jaret Matthew Gale, Patrice Silver, Joe Dettore, Sr., Chris
**(Footnote continued on next page…)**

assert that "[t]he individual petitioners are parents of children who are directly and immediately impacted by the [Pennsylvania Department of Education's] policy that permits school districts to use virtual learning as a substitute for in[-]person (face-to-face) instruction[,] and, therefore, their children are deprived of the benefit of 180 days of in-person instruction that is required by Section 1501 of the Public School Code of 1949 [(School Code)],[2]" 24 P.S. §15-1501.  (PFR ¶8.)  The PFR alleges that the Pennsylvania Department of Education's Policy "not only violates the School Code, but also denies students 'critical' non-education services and programs 'including meal programs, and social, physical, behavioral, and mental health services.'"  *Id.* ¶¶35, 37.  The PFR further avers that the Department's Policy is causing "every child in the Commonwealth permanent psychological damage from the lack of daily social interaction." *Id*. ¶45.

These facts are materially indistinguishable from those in *Reichley v. North Penn School District*, 537 A.2d 391 (Pa. Cmwlth. 1988).  In *Reichley*, the petitioners asserted their children's right to an education was violated, because school was unavailable while the teachers were on strike. *Id*.  Our Court said:

> Certainly, these **parents have an interest in seeing that the children receive an education including the "perks"** attendant to it such as sports, band, and various other extra-curricular activities. **This then gives these [p]etitioners a greater interest than that of the public at large**.  And, because of this interest in continued education for their children, their position is sufficiently at odds with the Association to create a controversy so as to

---

Brill, and Beth Rosica.  Some of these Petitioners are parents whose children attend public schools in the Commonwealth.

 2 Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101–27-2702.

entitle [the] [p]etitioners to standing under the Declaratory Judgments Act.[3]

*Id*. at 393 (emphasis added).

The Majority admits that "[i]n the context of school and education litigation, parents seeking to sue on behalf of their children generally have a direct and substantial interest" and, in the text of its opinion, cites case law holding that parents have standing to challenge a school district's policy that has an effect on the child's educational needs or curriculum. *Open PA Schools v. Department of Education* (Pa. Cmwlth., No. 504 M.D. 2020, filed May 12, 2022), slip op. at 8. Yet, as it pertains to the case most directly on point in this matter, *Reichley*, the Majority relegates its cursory review of that case to a footnote and attempts to distinguish it superficially. *See id.*, slip op. at 9 n.13. Indeed, although this Court in *Reichley* expressly concluded that the parents possessed standing under the test set forth in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975), the Majority surmises that this was not in fact the case, proclaiming that an additional element must also be satisfied, namely an allegation of an "injury in fact." *Open PA Schools*, slip op. at 9 n.13.[4]

---

[3] 42 Pa.C.S. §§7531-7541.

[4] Notably, the "injury in fact" discussion in *William Penn Parking Garage* that the Majority refers to deals primarily with the effect of regulatory oversight on companies/institutions that generally fall within the ambit of that area of oversight to illustrate the causal connection that is necessary between the two for purposes of demonstrating "aggrievement." *See id.* at 284 n.23, wherein the Supreme Court summarized the following cases: "*Barlow v. Collins*, 397 U.S. 159 (1970) (tenant farmers receiving benefits under federal statute have standing to challenge regulations increasing their freedom to assign the benefits in advance on the ground that their increased freedom to assign renders them more vulnerable to exploitation by their landlords because protection of tenant farmers from such exploitation is within the zone of interests protected by the statute); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970) (plaintiffs in the business of providing data processing services have standing to challenge **(Footnote continued on next page…)**

I do not believe this is a correct interpretation of *Reichley* and a fair representation of the law on standing. *Reichley*, the only case which most closely correlates to this matter, was straightforward in its holding that parents have a right to sue because they have an interest in seeing the children receive an education, including various extracurricular interests, and there was no discussion of any "injury in fact."

Nonetheless, to the extent the "aggrievement" component of standing subsumes an injury-in-fact inquiry, such will be established where the "interest [the petitioner] seeks to protect is arguably within the zone of interests sought to be protected . . . by the statute or constitutional guarantee in question." *William Penn Parking Garage, Inc.*, 346 A.2d at 284 n.23. Here, obviously, the interest Petitioners/parents seek to protect is their children's statutory right, under Section 1501 of the School Code, to receive 180 days of in-person education and the associated benefits thereof. This was all that was required in *Reichley*, and it is all that is required here. In desiring something more, the Majority, despite its disclaimer to the contrary, actually engages in a merits-based review of the underlying claim and, in essence, concludes that Section 1501 of the School Code does not confer substantive rights and/or the children of the Petitioners/parents were not "harmed"

---

administrative ruling permitting national banks to furnish such services to their customers because the 'zone of interests' protected by the regulatory scheme arguably includes the interest of non-bank competitors not being subjected to competition from banks in the provision of non-banking services); *Arnold Tours v. Camp*, 400 U.S. 45 (1970) (travel agents have standing to challenge ruling permitting banks to furnish travel services for same reason); *Investment Co. Institute v. Camp*, 401 U.S. 617 (1971) (investment companies have standing to challenge ruling permitting banks to operate investment funds for same reason)." Upon my review, I believe these cases are unhelpful in deciding the issue at bar because the causal relationship that exists between Petitioners/parents, the rights of their children to obtain an education, per the terms of Section 1501 of the School Code, and an alleged violation of that right is much more direct and unquestionable.

PAM - 4

or "injured" enough. *See Open PA Schools*, slip op. at 13 ("[T]he right of either parents or children to in-person education has not been declared in the Commonwealth, and while Petitioners seek here to have that right recognized, we decline to do so solely for the purposes of establishing Petitioners' standing . . . ."); *id.* at 13-14 ("Petitioners have again failed to allege any 'peculiar,' 'personal,' and 'individualized' harm to themselves or to their children's education . . . .").

Ultimately, I believe the Majority, in addressing the degree of the effects on the students from missing in-person days of school, misapplies the analysis required for determining whether the parents have standing. "In determining whether a party has standing, a court is concerned only with the question of who is entitled to make a legal challenge and **not the merits of that challenge.**" *In re T.J.*, 739 A.2d 478, 481 (Pa. 1999) (emphasis added). Here, Petitioners/parents assert the Department's 2020-21 Policy of providing mostly remote learning violates Section 1501 of the School Code. They allege psychological and social impact damages and educational delays, including the loss of "perks" referenced in *Reichley*. By concluding Petitioners/parents here have not asserted a violation of an established statutory right, I believe the Majority misapplies *Reichley*, which recognized that parents have an interest in their children receiving an education under the School Code, which also includes the attendant perks, *i.e.*, sports, meals, extracurricular activities.

Because I believe *Reichley* is directly on point and governs the issue of standing, I would find Petitioners/parents have standing and must respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

PAM - 5