IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Save Carbon County,           :
            :
      Petitioner    :
            :
     v.        : No. 468 M.D. 2024
            : Argued: September 11, 2025
Commonwealth of Pennsylvania,   :
Josh Shapiro, in his official     :
capacity of Governor, Pennsylvania   :
Department of Environmental    :
Protection, Jessica Shirley, in her   :
official capacity as Interim Secretary,  :
Pennsylvania Public Utility     :
Commission, Stronghold Digital    :
Mining, Inc., Stronghold Digital    :
Mining, LLC, Stronghold Digital    :
Mining Holdings, LLC, and Panther   :
Creek Power Operating, LLC,    :
            :
      Respondents   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE MICHAEL H. WOJCIK, Judge (P.)
      HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK         FILED: October 30, 2025


    Presently before the Court for disposition are two sets of preliminary objections to the original jurisdiction Amended Complaint filed by Save Carbon County (SCC).[1] The first set of preliminary objections were filed by the

---

[1] By order dated November 4, 2024, this Court ordered that the Amended Complaint would be treated as a Petition for Review pursuant to Chapter 15 of the Pennsylvania Rules of Appellate Procedure. We will therefore refer to the initiating pleading as a Petition for Review (PFR).

Commonwealth of Pennsylvania, Josh Shapiro in his official capacity as Governor of Pennsylvania (Governor Shapiro), the Pennsylvania Department of Environmental Protection (DEP), Jessica Shirley, in her official capacity as Interim Secretary (Secretary Shirley), and the Pennsylvania Public Utility Commission (PUC) (collectively, Commonwealth Respondents). The second set of preliminary objections were filed by Stronghold Digital Mining, Inc., Stronghold Digital Mining, LLC, Stronghold Digital Mining Holdings, LLC, and Panther Creek Power Operating, LLC (collectively, Stronghold or Stronghold Respondents).

## Background

This action pits SCC, a Pennsylvania non-profit corporation dedicated to saving Carbon County's rivers, parks, forests, farms, creeks and clean air, against the Stronghold Respondents who perform the lucrative and allegedly environmentally harmful activity of crypto mining. For their part, the Commonwealth Respondents are a party to this action based on the purported breach of their fiduciary duties as trustee of Pennsylvania's public natural resources. *See* PA. CONST. article I, §27.[2]

---

[2] Article I, section 27 of the Pennsylvania Constitution is referred to as the Environmental Rights Amendment (ERA). It states:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. article I, §27

SCC commenced this suit in the Court of Common Pleas of Philadelphia County (trial court). The parties later stipulated that this Court properly has jurisdiction over the matter. By order dated August 6, 2024, the trial court transferred the matter to this Court in our original jurisdiction.

The PFR alleges that Stronghold is in the business of cryptocurrency mining. Per SCC, "cryptocurrency" is a generic form of digital currency that is not backed by an issuing government. Instead, the value of the cryptocurrency is determined by market forces. PFR at ¶¶30-33. Bitcoin is the most well known and most used brand of cryptocurrency. Bitcoin relies on a "blockchain" technology to "act as a virtual ledger of all Bitcoin transactions." PFR at ¶¶34-35. Bitcoin's blockchain technology requires verification of each and every transaction in an attempt to ensure that "no single Bitcoin is going through a duplicative transaction." *Id.* at ¶36. "In other words, each Bitcoin can only be transacted one at a time." *Id.*

**Stronghold Respondents**

Stronghold's business is to verify Bitcoin transactions. In exchange for verifying transactions, Stronghold (and others like it) receives a reward of a transaction fee as well as a newly created Bitcoin. This reward for verifying transactions is referred to as Bitcoin mining or crypto mining. PFR at ¶¶37-38. Bitcoin and other cryptocurrencies are considered "digital assets" and not legal tender in the United States. *Id.* at ¶39.

To understand the purpose behind SCC's PFR we must look to how the crypto mining process works. SCC alleges that Stronghold uses a "Proof of Work" verification method. PFR at ¶41. Each transaction is added to a block, which then needs to be verified through the Bitcoin mining process. *Id.* at ¶42. In turn, each

3

block "has a certain hash – a long, random, and unique alphanumeric code." *Id.* at ¶43. Bitcoin miners use specialized computers to "guess" the correct hash. *Id.* at ¶44. The best way for a Bitcoin miner to increase its chances of guessing the correct hash is to "have great quantities of these specialized computers operating around the clock." *Id.* at ¶46. Once the correct hash is guessed, the transaction is verified, and it is added to the Blockchain. The miner then receives its reward of both a transaction fee and a newly created Bitcoin. *Id.* at ¶47.

SCC avers that due to the competitive and randomized nature of Bitcoin mining, the only way for a company like Stronghold to increase its chances of obtaining new Bitcoin is by having more computers running more frequently than its competitors. PFR at ¶48. Bitcoin miners use specialized computers that rely on electricity to operate, and the energy demands associated with proof of work Bitcoin mining is "extraordinarily high." *Id.* at ¶¶49, 51-52. Indeed, companies that specialize in Bitcoin mining, like Stronghold, often "operate ten[s] [] of [] thousands of [specialized computers] at any given point in time, creating a massive electricity demand." PFR at ¶53.

Stronghold contends that an alternative to proof of work verification exists. Known as "proof of stake" verification, this method purportedly does not require "computational energy" and uses "more than 99% less energy than proof[]of[]work crypto[]mining." *Id.* at ¶¶57-58.

As with any business, Stronghold seeks to operate in a competitive manner; thus, it possesses tens of thousands of specialized computers that run at its facilities 24 hours a day. PFR at ¶¶66-69. Stronghold further seeks a competitive advantage by reducing the cost of its electricity demands by operating its own

electric power production plants. *Id.* at ¶¶69-70. At issue here is Stronghold's Panther Creek Plant (Panther Creek) located in Carbon County. *Id.* at ¶72.

SCC asserts that while Stronghold has access to a large supply of private electricity, its pollution and emissions "are very much public." PFR at ¶¶73-74. SCC avers that Stronghold's consumption of vast amounts of electricity has resulted in elevated carbon dioxide ($CO_2$) emissions that negatively impact the environment. *Id.* at ¶¶73-74; 80-81. In turn, SCC argues that the Commonwealth Respondents "have been sitting back and not regulating cryptocurrency mining at Panther Creek or elsewhere in Pennsylvania." *Id.* at ¶82.

SCC notes that Stronghold acquired the Panther Creek facility in November of 2021. At that time, Stronghold began operating the facility at full capacity and burning waste coal as a fuel source. PFR at ¶86. SCC observes that waste coal is "a by-product of the unregulated coal industry from the 20th Century." *Id.* at ¶87. SCC asserts that the burning of waste coal creates substantial carbon emissions and releases dangerous air pollutants when burned as a fuel source. *Id.* at ¶89. SCC also avers that Panther Creek's operations release harmful amounts of sulfur dioxide, nitrogen oxide and mercury. *Id.* at ¶¶97, 99, 100, 102-04. Finally, neighbors of the Panther Creek facility have reported issues with waste coal debris littering their property and area streets. *Id.* at ¶111.

SCC further asserts that Stronghold is burning tires as a fuel source, thereby presenting additional environmental concerns. SCC alleges that in June of 2023, Stronghold applied for a DEP permit to burn tires, but the permit request is still pending. PFR at ¶¶91-92. Furthermore, SCC contends that DEP was aware that Stronghold was burning tires for fuel without a permit yet did nothing to stop

5

Stronghold from doing so. *Id.* at ¶95. Emissions and pollution data show that Stronghold's operations are harming the environment. *Id.* at ¶96.

SCC avers that Carbon County's greatest economic driver is tourism; however, Stronghold is creating an industrial hazard "without contributing any meaningful benefits back to the residents of Carbon County." PFR at ¶¶117-18. SCC emphasizes that Stronghold keeps the energy it produces rather than selling some of it back to the grid and, further, that Stronghold has at times even purchased electricity from the grid (thereby competing with retail customers, increasing demand, and driving up prices for local residents). *Id.* at ¶¶120-22.

### Commonwealth Respondents

Turning to the Commonwealth Respondents, SCC asserts that the ERA reflects that the Commonwealth has the duty of a trustee to "conserve and maintain" Pennsylvania's public natural resources. PFR at ¶131. Rather than performing its fiduciary duty, SCC maintains that the Commonwealth has "incentivized and facilitated Stronghold's operations[.]" *Id.* at ¶134. This occurs because the Commonwealth provides "tens of millions of dollars in tax credits and alternative energy credits." *Id.* at ¶135.

Alternative energy credits are provided through the Alternative Energy Portfolio Standards Program (AEPS). PFR at ¶138.[3] Pursuant to Section 7 of the AEPS Act, 73 P.S. §1648.7, both the DEP and the PUC are responsible for overseeing the grant of alternative energy credits. PFR at ¶139. SCC asserts that:

> According to Stronghold's Annual Report for Fiscal Year ending December 31, 2023, Stronghold received $19.2

---

[3] *See* the Alternative Energy Portfolio Standards Act, Act of November 30, 2004, P.L. 1672, *as amended*, 73 P.S. §§1648.1-1648.9.

6

million from alternative energy credits from the Commonwealth because coal refuse is classified as a Tier II Alternative Energy Source. In 2022, [Stronghold] received $9,960,655[.00] from alternative energy credits.

PFR at ¶136. SCC also alleges that Stronghold reported receiving an additional $2.86 million in waste coal tax credits in 2023 and $1.84 million in 2022. *Id.* at ¶140. Under Section 1704-J of the Tax Reform Code of 1971 (Tax Reform Code), 72 P.S. §8704-J,[4] DEP is responsible for verifying if a company qualifies for waste coal tax credits based on its electricity generation. *Id.* at ¶142.

SCC maintains that alternative energy credits and waste coal tax credits are not designed for private, "vertically-integrated" companies such as Stronghold. PFR at ¶144. Rather, these credits are intended for companies that produce electricity for retail electric customers. *Id.* at ¶145. Since Stronghold produces and consumes its own electric power and is not generating significant electric power for retail customers, SCC contends that it is not entitled to either alternative energy credits or waste coal tax credits. *Id.* at ¶147. "Yet," SCC states, "the Commonwealth, [the] DEP, and [the] PUC ignore this reality and give Stronghold tens of millions in tax credits per year." *Id.* at ¶148.

### Petition for Review Count I: Breach of Fiduciary Duty
### SCC v. Commonwealth Respondents

Count I of the PFR seeks relief from the Commonwealth Respondents. It alleges that the Commonwealth Respondents have breached their trustee obligations and fiduciary duties under the ERA by:

> (a) Granting Stronghold AEPS credits and [waste coal] tax credits to fuel its Bitcoin mining operation;

---

[4] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§7101-10004. Section 1704-J was added by Section 33 of the Act of July 13, 2016 P.L. 526.

(b) Granting Stronghold AEPS credits and waste coal tax credits even though it does not sell the majority of its electricity generation to retail customers;

(c) Classifying Stronghold as an electric generation supplier;

(d) Permitting Stronghold to burn waste coal to fuel its Bitcoin mining operation;

(e) Allowing Stronghold to burn tires without a permit to fuel its Bitcoin mining operation;

(f) Failing to control all emissions and toxins from Stronghold's Panther Creek . . . facility;

(g) Failing to regulate the crypto[]mining industry;

(h) Failing to regulate proof[]of[]work crypto mining;

(i) Failing to regulate energy expenditures of the cryptocurrency and Bitcoin mining industry;

(j) Failing to develop rules relating to crypto[]mining; and

(k) Failing to consider the concerns of local Carbon County residents in issuing permits to Stronghold.

PFR at ¶156(a)-(k).

SCC seeks injunctive relief via an order directing the Commonwealth Respondents to:

(a) Revok[e] Stronghold's permit to operate until such time as it fully eliminates its toxic and dangerous emissions;

(b) Prohibit[] Stronghold from burning tires;

(c) Revok[e] Stronghold's permit to operate until such time as it switches to "proof of stake" verification;

8

(d)  Require Stronghold to do quarterly emissions testing and environmental hazard assessments for all known environmental hazards, to [be] made available to the public without limitation;

(e)  Stop granting AEPS credits, waste coal tax credits, and other subsidies to Stronghold;

(f)  Creat[e] and enforce[e] rules and regulations relating to energy use by crypto[]mining operations; and

(g)  Stop classifying Stronghold[] as an electric generation supplier.

PFR at ¶158(a)-(g).

**Petition for Review Count II:  Public Nuisance**
**SCC v. Stronghold Respondents**

Count II of the PFR alleges that Stronghold's operations, including transporting waste coal and burning waste coal and tires to fuel its operations, creates a public nuisance because it causes an invasion of SCC's and its members' use and enjoyment of public land as well as the clean public water and fresh air in public spaces.  PFR at ¶160.  SCC avers that Stronghold's nuisance is unreasonable because there is no justifiable reason for its operations to invade the public's use and enjoyment or to pollute harmful toxins into the air and water.  *Id.* at ¶161.  SCC further avers that Stronghold's conduct violates the Clean Streams Law,[5] because it pollutes into nearby public waterways and is therefore a *per se* public nuisance.  *Id.* at ¶162.  SCC asks for compensatory and punitive damages from the Stronghold Respondents individually, jointly and/or severally, together with costs of suit, interest and attorney's fees.  Count II, Wherefore Clause.

_____

[5] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1 - 691.1001.

## Petition for Review Count III:  Private Nuisance
## SCC v. Stronghold Respondents

In this Count III, SCC maintains that Stronghold's operations, including transporting waste coal and burning waste coal and tires to fuel its operations, create a private nuisance to SCC and its members because "it causes an invasion to [SCC's] members' properties."  PFR at ¶165.  SCC asserts that the interference is intentional as Stronghold knows that its operations cause emissions and pollution that impacts SCC's members' properties.  Furthermore, the conduct is unreasonable because Stronghold's Bitcoin mining operation does not justify its emissions and pollution. *Id.* at ¶¶166-67.  SCC asks for compensatory and punitive damages from the Stronghold Respondents individually, jointly and/or severally, together with costs of suit, interest and attorney's fees.  Count III, Wherefore Clause.

## Petition for Review Count IV: Products Liability-Design Defect
## SCC v. Stronghold Respondents

In Count IV of the PFR, SCC contends that the process for Stronghold to obtain Bitcoin is defectively designed because it causes environmental harm. Specifically, "[p]roof []of[]work mining, which is the core of Stronghold's business, is inherently defective and dangerous because it requires enormous energy expenditures to obtain Bitcoin."  PFR at ¶¶171-72.  SCC maintains that Stronghold "doubles down on" this defect, by burning waste coal and tires to fuel its Bitcoin mining operation.  *Id.* at ¶173.  SCC asserts that the social utility of Stronghold obtaining Bitcoin for its own private gain is not justified by the adverse environmental and health consequences of its operations.  *Id.* at ¶174.  Because Stronghold's "defective Bitcoin mining operation" causes direct harm to SCC's interests and members, SCC asks for compensatory and punitive damages from the Stronghold

Respondents individually, jointly and/or severally, together with costs of suit, interest and attorney's fees. *Id.* at ¶176; Count IV, Wherefore Clause.

### Petition for Review Count V: Negligence
### SCC v. Stronghold Respondents

Finally, in Count V of the PFR, SCC alleges that Stronghold owes a duty to exercise ordinary care and diligence to refrain from negligent conduct that would harm its neighbors and SCC's members. PFR at ¶178. SCC asserts that Stronghold has negligently failed to mitigate the harms and risks of proof of work cryptocurrency mining, including failing to limit significant toxic emissions and pollution due to its energy generation and consumption. *Id.* at ¶179. SCC also asserts that Stronghold proof of work mining has negligently created an enormous electricity demand, resulting in harm to SCC and its members. *Id.* at ¶¶180-81. SCC seeks compensatory and punitive damages from the Stronghold Respondents individually, jointly and/or severally, together with costs of suit, interest and attorney's fees. Count V, Wherefore Clause.

### Respondents' Preliminary Objections

The Commonwealth Respondents raise five preliminary objections including: (1) sovereign immunity; (2) that Governor Shapiro is an improper party to the action; (3) failure to exhaust mandatory statutory and administrative remedies; (4) failure to state a claim against the DEP and Secretary Shirley; and (5) failure to state a claim against the PUC. In turn, the Stronghold Respondents raise nine preliminary objections. Three of the preliminary objections relate to SCC's lack of standing. The remaining preliminary objections assert ripeness, insufficient

11

specificity in pleading and raise demurrers to SCC's products liability claim and its requests for punitive damages and attorneys' fees.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner. *Id.*

### SCC v. Commonwealth Respondents
### Lack of Associational Standing: SCC's ERA Claim

First, we will address Stronghold's argument that SCC lacks associational standing to bring its ERA claim.[6] Stronghold asserts that SCC has failed to plead two sets of essential facts to support associational standing for its

---

[6] In *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021), our Supreme Court recognized that

> [s]tanding is a justiciability concern, implicating a court's ability to adjudicate a matter. *See Robinson* [*Township v. Commonwealth*], 83 A.3d [901, 916 (Pa. 2013)]; *see also Town of McCandless v. McCandless Police Officers* [*Association*], 901 A.2d 991, 1002 (Pa. 2006) (explaining standing, ripeness, and mootness are related justiciability considerations that "are concerned with the proper timing of litigation."). Accordingly, a court must resolve justiciability concerns as a threshold matter before addressing the merits of the case. *Robinson T[ownship]*, 83 A.3d at 917.

ERA claim.[7]  First, Stronghold notes, SCC's PFR does not plead any facts to support the conclusory allegation in Count I that the Commonwealth Respondents' alleged breaches of the ERA directly caused harm to members of SCC.  Stronghold's Brief at 10.  Second, Stronghold contends, even if SCC has identified harm to its members, it fails to do so with the specificity required for an ERA claim.  *Id.* at 10-11 (citing *Muth v. Department of Environmental Protection*, 315 A.3d 185 (Pa. Cmwlth. 2024) and *Food & Water Watch v. Department of Environmental Protection* (Pa. Cmwlth. Nos. 565 C.D. 2020, 621 C.D. 2020, 627 C.D. 2020, filed April 12, 2021)).  In this regard, Stronghold emphasizes that SCC's PFR fails to offer details about the nature and frequency of its members' use of the allegedly affected environmental resources or, for that matter, identify those resources by name.

SCC responds that it does indeed have standing to bring its breach of fiduciary duty claims under the ERA.  Citing to our Supreme Court's decision in *Robinson Township*, 83 A.3d at 901, SCC notes that under Pennsylvania law, an association has standing as a representative of its members to bring a cause of action even in the absence of an injury to itself, if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the action challenged.  An association seeking standing is not required to disclose the identity of its affected member, but it must describe the affected member in sufficient detail to show that the member is aggrieved.  *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 511 (Pa. Cmwlth. 2019), *aff'd*, 261 A.3d 467 (Pa. 2021)).

---

[7] Curiously, this preliminary objection was not raised by the Commonwealth Respondents and SCC has not objected to Stronghold raising the standing issue.  Accordingly, we believe SCC has waived any objection to Stronghold's standing to raise its preliminary objection to Count I of the PFR.  *See Bullock v. County of Lycoming*, 859 A.2d 518, 523 (Pa. Cmwlth. 2004) (the issue of standing is not jurisdictional and failure to raise it in preliminary objections waives the issue in future proceedings).

Finally, SCC asserts that standing may be shown without identification of individual members, but only where the complaint's description of the organization's members is sufficient to show that they are aggrieved. *Americans for Fair Treatment, Inc. v. Philadelphia Federation of Teachers*, 150 A.3d 528, 534-35 (Pa. Cmwlth. 2016).

Citing to this Court's opinion in *Funk v. Wolf*, 144 A.3d 228, 244 (Pa. Cmwlth. 2016), SCC notes that

> [p]articularly within the context of environmental litigation, this Court has cited favorably the United States Supreme Court holding that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."

SCC's Brief at 44.

SCC believes it has sufficiently pleaded that at least one of its members would have standing to bring a claim individually against the Commonwealth Respondents for breaching their fiduciary duties under the ERA. SCC pleaded that it is an organization made up of about 90 citizens of Carbon County and surrounding areas, with several members living in Nesquehoning, Pennsylvania where the Panther Creek facility is located. PFR at ¶4. Furthermore, the PFR asserts that SCC's purpose is to "save what its members love about Carbon County: its rivers, its parks, its forests, its farms, its creeks and its clean air." SCC's Brief at 45 (quoting PFR at ¶2). SCC has alleged that Stronghold's environmentally harmful conduct takes place in Carbon County, detailing Panther Creek's pollution and emissions. PFR at ¶¶76-80; 89; 97-105. SCC notes that although "Stronghold argues that [SCC's PFR] is not specific enough as to the harm suffered to confer standing—that stems from Stronghold's own failure to publicly release its full emissions data and to test for known toxic and carcinogenic substances." SCC's Brief at 47. Thus, SCC

14

contends that its members, as nearby residents and individuals who enjoy the natural resources of Carbon County, have a direct, substantial and immediate interest in the outcome of this case. *Id.*

To the extent that Stronghold cites *Muth* to support its assertion that SCC failed to aver its ERA claim with specificity, SCC points out that *Muth* was adjudicated at the summary judgment stage, which comes with a different evidentiary standard of proof than is the case here, where the Court is disposing of preliminary objections.

To have associational standing, the petitioner organization must allege sufficient facts to show that at least one of its members has a substantial, direct and immediate interest. *Americans for Fair Treatment*, 150 A.3d at 533.[8]

> General descriptions of an organization's members cannot establish standing if they do not show that a member or members are sufficiently adversely affected to have standing. *Compare Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390, 398, 400 (Pa. Cmwlth. 2015) (*en banc*) (allegation that organization's "members live within one to three blocks of the proposed sign" was inadequate to establish standing to challenge the sign) *and Concerned Taxpayers of Allegheny County* [*v. Commonwealth*], 382 A.2d [490, 494 [(Pa. Cmwlth. 1978)]] (allegation that members were residents and citizens of Pennsylvania was inadequate to establish standing to challenge constitutionality of statute governing payment of state officials) *with Robinson Township*, 83 A.3d at 922 (organization had standing where it submitted affidavits showing that members resided in or owned property in zoning districts directly

---

[8] A party has a substantial interest in the outcome of litigation if his interest "surpasses that of all citizens in procuring obedience of the law." *Funk*, 144 A.3d at 244. An interest is direct if there is a causal connection between the matter complained of and the harm alleged. *Id.* Finally, an interest is immediate when the "causal connection is not remote or speculative." *Id.* (citing *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009)).

15

affected by the statute that it challenged) *and National Solid Wastes Management Association* [*v. Casey*], 580 A.2d [893, 899 (Pa. Cmwlth. 1990)] (organization had standing to seek declaratory judgment where it pleaded that its members had filed permit applications that were directly affected by the challenged order). Where the organization has not shown that any of its members have standing, the fact that the challenged action implicates the organization's mission or purpose is not sufficient to establish standing. *Armstead*, 115 A.3d at 399–400; *Concerned Taxpayers of Allegheny County*, 382 A.2d at 494.

*Id.* at 533-34.

Dismissal for lack of standing is proper where the petitioner organization neither identifies its affected members nor pleads sufficient facts to permit a court to determine that they have a substantial, direct and immediate interest. *Americans for Fair Treatment*, 150 A.3d at 534 (citing *Lincoln Party by Robinson v. General Assembly*, 682 A.2d 1326, 1330 (Pa. Cmwlth. 1996)). Admittedly, standing may be shown without identification of individual members, but only where the complaint's description of the members is sufficient to show how they are aggrieved. *Id.* at 534-35.

Based on our review of the PFR, we cannot say that SCC has adequately pled that it has associational standing to bring its ERA claims against the Commonwealth Respondents. It is apparent that the PFR identifies SCC as an organization of citizens of Carbon County and surrounding areas, with several members living near the Panther Creek facility. PFR at ¶4. The PFR also identifies SCC's mission to save Carbon County's rivers, parks, forests, farms, creeks and clean air by ensuring that Carbon County is not polluted by environmental toxins. *Id.* at ¶¶2-3. Finally, the PFR contains a multitude of allegations concerning how Stronghold's business operations are allegedly harmful to the environment. PFR at

16

¶¶81; 96-98; 100-03; 104-05; and 157. Absent from the PFR, however, are any allegations as to how the Commonwealth Respondents' alleged failure to perform their fiduciary duties under the ERA has caused harm to an SCC member. There are no allegations in the PFR that an SCC member accesses or uses any of the impacted portions of the environment. Also absent from the PFR are any allegations as to how Stronghold's alleged pollution and emissions have negatively impacted an SCC member. Without more, simply averring that SCC members wish to protect Carbon County's environment, that members of SCC live near the Panther Creek facility, and that Panther Creek's operations harm the environment, is not sufficient to confer standing on the organization.

We emphasize that to be sufficiently specific, the allegations of the PFR need not exhaustively allege copious facts to meet the standing threshold. Nevertheless, the PFR must, at a minimum, allege *sufficiently detailed* facts showing a causal connection between the matter complained of, i.e., the Commonwealth Respondents' failure to fulfill their fiduciary duties under the ERA, and the harm alleged. *Funk*. Here, no harm is alleged beyond a generalized harm to the environment.[9] Accordingly, we sustain Stronghold's preliminary objection and dismiss SCC's claims against the Commonwealth Respondents without prejudice to file an amended PFR.

## SCC v. Stronghold Respondents
### Lack of Associational Standing: SCC's Claims for Damages

Next, Stronghold asserts that SCC does not have associational standing for its monetary damage claims against Stronghold. Stronghold maintains that under

---

[9] While the PFR does indicate there were issues with waste coal debris, PFR at ¶111, and that an individual's trees and plants had died, PFR at ¶118, those allegations involve neighbors of the Panther Creek facility. It was not alleged that these neighbors were members of SCC.

Pennsylvania Law, "an organization like SCC can invoke associational standing only 'if the nature of the claim asserted and the relief sought does not render the individual participation of each injured party indispensable to proper resolution of the issue.'" Stronghold's Brief at 12 (quoting *American Booksellers Association v. Rendell*, 481 A.2d 919, 927 (Pa. Super. 1984)). Here, in Counts II through V of the PFR, SCC seeks compensatory and punitive damages on behalf of itself *as well as* its members. Stronghold posits:

> Even considering just compensatory damages, those damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's conduct" and "may include not only out of pocket loss and monetary harms, but also such injuries as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." These factors simply cannot be explored without the individual participation of each SCC member allegedly so harmed.

Stronghold's Brief at 13 (quoting *Bert Co. v. Turk*, 298 A.3d 44, 58 (Pa. 2023)) (footnotes omitted).

Stronghold contends that this Court reached this very conclusion in the case of *Building Industry Association of Lancaster County v. Manheim Township*, 710 A.2d 141 (Pa. Cmwlth. 1998). Stronghold argues that the instant matter presents the same complications as in *Building Industry*. Individual members of SCC will be affected by Stronghold's operations, if at all, to different degrees and in different ways. Stronghold asks that this Court dismiss the SCC claims against Stronghold that rely on associational standing.

SCC dismisses Stronghold's assertions, arguing that at this early stage of the proceedings, it has sufficiently alleged that it has standing to bring claims on associational standing against Stronghold. SCC emphasizes that Stronghold is not

only "damaging the individual members of [SCC], but Stronghold is also harming the trust property that belongs to members of [SCC] (as well as the people of Pennsylvania) under the ERA." SCC's Brief at 49-50. While harm to any individual may require an individual assessment of damages, "the harm to the trust property is an equal amount shared by all members of [SCC]." *Id.*

We agree with Stronghold and find the *Building Industry* case persuasive. *Building Industry* involved a challenge by an association of building contractors and real estate developers (Association) to a Manheim Township (Township) ordinance which imposed an impact fee on developers. The Association filed a complaint against the Township seeking declaratory relief and a refund of all impact fees collected under the ordinance. *Building Industry*, 710 A.2d at 143. Among the standing issues raised by the Township was whether the Association had standing as an organization to seek a refund of the impact fees. In determining that the Association did not have organizational standing, the Court found the following statement from the United States Supreme Court persuasive:

> [I]n the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf.

*Building Industry*, 710 A.2d at 146 (quoting *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975)).

The *Building Industry* Court theorized that a similar scenario was before it as the Association's members had suffered individualized damages that

19

were not shared in amount by all of its members. "Therefore, each member would need to offer proof as to the amount of injury suffered by *that* particular member." *Building Industry*, 710 A.2d at 146 (emphasis in original). Thus, the Court reasoned, each individual member needed to seek a refund of the impact fee, and the Association had no standing as an organization to do so on behalf of its members.

The same issue is presented here. SCC seeks compensatory and punitive damages from the Stronghold Respondents in Counts II through V of its PFR. As was the case in *Building Industry*, it is apparent that the damages allegedly suffered by SCC's members are individualized. Thus, in order to obtain relief in damages, SCC must heed the directive of the United States Supreme Court in *Warth* by naming, as a party to the suit, each member of SCC who claims injury as a result of Stronghold's practices.

Accordingly, we sustain Stronghold's preliminary objection asserting that SCC does not have associational standing for its monetary and punitive damages claims against Stronghold and dismiss Counts II through V of the PFR without prejudice to file an amended PFR.

## Conclusion

Because we have sustained Stronghold's preliminary objections raising associational standing, Counts I through V of SCC's PFR are dismissed without prejudice. SCC may file a Seconded Amended PFR no later than 30 days from the exit date of this Court's order disposing of the preliminary objections.[10]

MICHAEL H. WOJCIK, Judge

---

[10] In light of our disposition of this case, we need not address the remaining preliminary objections.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Save Carbon County,                          :
                                             :
                          Petitioner         :
                                             :
            v.                               :  No. 468 M.D. 2024
                                             :
Commonwealth of Pennsylvania,                :
Josh Shapiro, in his official                :
capacity of Governor, Pennsylvania           :
Department of Environmental                  :
Protection, Jessica Shirley, in her          :
official capacity as Interim Secretary,      :
Pennsylvania Public Utility                  :
Commission, Stronghold Digital               :
Mining, Inc., Stronghold Digital             :
Mining, LLC, Stronghold Digital              :
Mining Holdings, LLC, and Panther            :
Creek Power Operating, LLC,                  :
                                             :
                          Respondents        :

O R D E R

AND NOW, this 30th day of October, 2025, the preliminary objections of Stronghold Digital Mining, Inc., Stronghold Digital Mining, LLC, Stronghold Digital Mining Holdings, LLC, and Panther Creek Power Operating, LLC raising Save Carbon County's (SCC) lack of associational standing are SUSTAINED and Counts I through V of SCC's Petition for Review are DISMISSED WITHOUT PREJUDICE.

SCC may file a Second Amended Petition for Review within 30 days of the exit date of this Order.

_____
MICHAEL H. WOJCIK, Judge